686 So.2d 96 (1996)
STATE of Louisiana
v.
Melvin R. WHITE.
No. 96 KA 0592.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*97 Walter P. Reed, District Attorney by Dale Branch, William R. Campbell, Jr., Assistant District Attorneys, Franklinton, for Appellee State of Louisiana.
John R. Simmons, Jr., James H. Looney, Covington, for Defendant-Appellant Melvin R. White.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
Defendant, Melvin R. White, was charged by bill of information with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. After trial by jury, defendant was convicted as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of five and one-half years, without benefit of probation, parole or suspension of sentence and with credit for time served. Defendant has appealed, urging *98 two assignments of error. Additionally, in his appellate brief, defendant asks this Court to review the record for patent error. Such a request is unnecessary, as this Court routinely reviews all criminal appeals for patent error. See La.Code Crim. P. art. 920(2). In this case, our review discloses no such reversible error.
The instant offense occurred on the evening of November 2, 1994, at a grocery store in Washington Parish. Some boys from Varnado High School and one of the school's coaches, Robert Kim Hunt, had gone to the store after football practice and were standing together outside at the front of the store. Defendant drove up in the parking lot at the store in his pickup truck, to the point that the truck's bumper touched some of the boys. Defendant exited the truck and engaged in an obscene verbal exchange with the boys. All the while, Hunt thought what he was witnessing was only "horse play." However, Hunt was quickly disillusioned when defendant spun around, reached into his truck and pulled out a handgun.[1] Defendant began waving the gun around and threatened to shoot all of them. Hunt began pushing the boys back and succeeded in getting them to the side of the store. In the meantime, defendant placed the gun in his waistband or back pocket and went into the store. Troy Seals, Jr., a district fire chief, was outside the store at the time the incident occurred and reported the matter to the Washington Parish Sheriff's Office over his two-way radio. Seals continued to monitor defendant after defendant went into the store and observed defendant exit the store and get into defendant's truck. When Washington Parish Deputy Sheriff Scott Walters arrived in response to Seals' report of the incident, Seals pointed out the truck in which defendant was seated. Walters approached defendant and patted him down for weapons. Although Walters found no weapons on defendant's person, he recovered a loaded Larson.32 pistol inside defendant's truck.

ASSIGNMENT OF ERROR NO. ONE:
In this assignment, defendant contends that the trial court erred in overruling his objection, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This challenge was based on the prosecutor's use of peremptory challenges to exclude three black prospective jurors: Dewayne Ellzey, Brenda L. Chapman, and Mary C. Baker. The defendant asserts that the court applied "the incorrect standard" in accepting the prosecutor's reasons for peremptorily challenging those prospective jurors; the court failed to assess the weight and credibility of each of the reasons given by the prosecutor and whether or not each of the reasons was legitimate and acceptable.
In Batson, the Supreme Court adopted a three-step analysis to determine whether or not the constitutional rights of a defendant or prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.[2] Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) [citations omitted; footnote ours].
"The second step of this process does not demand an explanation that is persuasive, or even plausible.... At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation" Purkett v. Elem, 514 U.S. 765, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). A trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations; such findings ordinarily should be entitled to deference by a reviewing court. *99 Batson v. Kentucky, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Reasons offered to explain the exercise of peremptory challenges should be deemed race neutral unless a discriminatory intent was inherent in those reasons. See Hernandez v. New York, 500 U.S. at 360, 111 S.Ct. at 1866.
Mr. Ellzey, Ms. Chapman and Ms. Baker were members of the first panel of eighteen prospective jurors from which eight positions on the twelve-person jury were filled. At the conclusion of voir dire examination of the first panel after the state peremptorily excused Mr. Ellzey, Ms. Chapman and Ms. Baker, defendant entered his Batson objection on the basis they were black persons. The trial court responded by saying that "[t]hree black jurors have been accepted."[3] Thereupon, the following exchange occurred:
MR. TALLEY [DEFENSE COUNSEL]:
I ask the state for racial control reasons.
MR. BRANCH [THE PROSECUTOR]:
Very well. Mr. Ellzey did not communicate with me very well. He did not understand what we were saying and felt he was not paying attention and he also answered the question insofar as the trial is concerned he thought if he [defendant] served time he should be given a [second] chance. I felt he [Ellzey] would carry that over into the jury deliberations.
THE COURT:
What about the others?
MR. BRANCH:
I did not know you were ready for the others.
THE COURT:
Yes, I am ready for the others.
MR. BRANCH:
Miss Chapman is unemployed, has three children. I feel that she understands the system, so I believe that makes her background makes her more inclined to not hold it against people. We alsoit is not of record, I understand, but we are going to check on if she has been convicted of a felony. It may have been a misdemeanor theft. She also was not very communicative to me. And Mrs. Baker, her answers to numerous questions about her relationship, her knowledge of Mr. Talley, who represented her cousin, Robert Magee, who apparently is Mr. Talley apparently represented him in a criminal case. She felt it was important to bring that up. She felt she might not be impartial toward the state because of that. I point out to the court that I have also excused two white males.
THE COURT:
The court finds that those reasons are racial control reasons[4] and the court also finds and observes that Mrs. Parlean Tate, a black lady, has been accepted by the state. The court overrules the objection. [endnote ours]
The remaining four positions on the jury and the alternate position were filled from the second panel of ten prospective jurors. The record does not reflect that defendant made any additional Batson objection(s). In filling the twelve positions on the jury, the state used only six of its allotment of twelve peremptory challenges; and, the state used the single peremptory challenge available to it in filling the alternate position.
We further note there is no record evidence that any of the prospective jurors were even questioned as to their race. The only indication of the race of any of the prospective jurors, or the racial composition of the actual jury selected, is derived from the statements made during voir dire by the court, defense counsel and the prosecutor. The record reflects that the state peremptorily challenged the three black individuals from the first panel, and that one of the seated jurors from the first panel was black. The record does not reflect whether or not *100 any other black persons were peremptorily excused by the state or whether or not any other black individuals from the second panel were seated as a juror or as the alternate juror.
In asserting his Batson claim to the trial court, defendant merely objected to the striking of the three black prospective jurors and asked that the prosecutor give race-neutral reasons for those strikes. The defendant offered no other facts to meet his burden of establishing a prima facie case of purposeful discrimination by the state under the first step of the Batson analysis. See State v. Green, 94-0887, p. 24 (La.5/22/95); 655 So.2d 272, 287-288 (which sets forth an illustrative listing of facts relevant to the establishment of a prima facie case). Without the trial court ever expressly ruling as to whether or not defendant had made out the requisite prima facie case, the state articulated explanations for the three challenges. Thereafter, in overruling the Batson objection, the trial court determined that the state's explanations were race neutral and noted that the prosecutor had accepted Tate, a black juror, to serve on the jury.
In our view, defendant clearly failed to meet his burden of production under step one. Nevertheless, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. at 359, 111 S.Ct. at 1866.
The reasons given by the state for exercising the peremptory challenges are facially "race-neutral." They contain none of the cultural, geographic, or linguistic classifications which, due to the ease with which such classifications may serve as a proxy for an impermissible classification, invite particularly exacting scrutiny. Cf. Hernandez v. New York, 500 U.S. at 360-362, 111 S.Ct. at 1866-1868 (wherein a prosecutor's striking of Spanish-speaking jurors "raised a plausible, though not a necessary, inference that language might be a pretext for what in fact were race-based peremptory challenges"). Hence, we conclude that none of the reasons articulated by the state are readily associated with the suspect class which is alleged to be the object of the state's discriminatory use of peremptory strikes; i.e., prospective black jurors.
For these reasons, we find that the state sustained its burden of articulating "race-neutral" reasons for the exercise of peremptory strikes at issue. Whether these reasons are substantial and, more importantly, whether they are substantiated by the record, is a question to be determined in the third stage of the Batson analysis. See State v. Green, 94-0887 at 27, 655 So.2d at 289. Reviewing courts owe the trial judge proper deference in assessing the credibility of in-court testimony. Thus, the proper inquiry in this final stage of the Batson analysis is not whether the state has disproved the existence of purposeful discrimination suggested by a defendant's prima facie case; rather, the question is whether a defendant's proof, when weighed against the prosecutor's offered "race-neutral" reasons, is strong enough to persuade the trier-of-fact that such discriminatory intent is present. Any other approach would violate the principle that the ultimate burden of proving racially motivated strikes in violation of Batson rests with the opponent of the strike. See State v. Green, 94-0887 at 29; 655 So.2d at 290.
On appeal, defendant appears to specifically contest some of the reasons articulated by the state for challenging Ms. Chapman and Ms. Baker. Notwithstanding any contrary assertion by defendant, during voir dire, Ms. Baker testified in response to questioning by the trial court that defense counsel had represented her cousin (apparently in a criminal case) and indicated she felt defense counsel had done a good job in the matter. Ms. Baker did not indicate that she felt she could not be impartial because defense counsel had represented the cousin. However, we have no difficulty appreciating the state's apparent concern about her impartiality as reflected in the prosecutor's reasons. In regard to one of the reasons articulated by the prosecutor for peremptorily challenging Ms. Chapman, defendant correctly points out that the record does not substantiate that she had any prior criminal conviction. Thus, the prosecutor's *101 statement concerning his checking to see if she had a prior conviction is not a race-neutral reason supported by the record. Nevertheless, the state's other articulated reasons for striking Ms. Chapman are unaffected by the failure to substantiate any prior conviction of her.
Considering all of the circumstances present in this case detailed above, we find no abuse of discretion or error by the trial court: there was no purposeful discrimination based on race by the state against black persons. The trial judge saw and heard the prospective jurors and the prosecutor. He obviously concluded there were reasonable bases for the prosecutor striking the prospective jurors whose strikes were opposed by defendant. Nor do we find anything in this record to otherwise show that the state employed a tactic of purposeful racial discrimination in its exercise of peremptory challenges in this case. Moreover, had discrimination been its purpose, the state had six unused peremptory challenges available which it could have used to exclude the black juror who apparently served on the jury and other black persons who might have served. See State v. Brown, 522 So.2d 1110, 1115 (La.App. 1st Cir.1988), writ denied, 548 So.2d 1222 (La.1989).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. TWO:
Defendant contends that the trial court erred by overruling defense counsel's objection to state witness Troy Seals' grossly prejudicial remark about an irrelevant bad act of defendant. This alleged improper remark occurred during Seals' direct examination. He was relating what he had observed at the time of the incident. Seals testified that, while he was at the front of the store standing near the ice cooler, Seals looked around and saw defendant getting out of the pickup truck with a pistol. It was in the foregoing context that Seals made the alleged improper remark; i.e., that defendant had made the statement that "he was going to show them [sic] white S.O.B.'s something."
Defendant asserts that the remark suggested to the predominately white jury that defendant intended to use his gun to harm white people. He submits that the remark raised fears of white jurors that defendant posed a threat to white persons and, thus, interjected the element of racial hatred into the trial.
La.Code Evid. art. 404(B)(1) authorizes the admission of evidence of other crimes, wrongs, or acts when the evidence "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." In this situation, we find that the trial court did not err by overruling defendant's objection to the evidence at issue and by refusing to grant defendant's request for a mistrial, as the challenged evidence was admissible as part of the res gestae; id est, an integral part of the act or transaction constituting the instant offense. Cf. State v. Nedd, 93-1906, pp. 4-5 (La.App. 1st Cir. 11/10/94); 647 So.2d 346, 348-349.
This assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The predicate felony for the instant offense was defendant's May 14, 1990, illegal use of a weapon conviction, a violation of La. R.S. 14:94.
[2] The scope of a Batson claim has been extended to other "suspect classifications," such as gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-42, 114 S.Ct. 1419, 1428, 128 L.Ed.2d 89 (1994).
[3] Based upon our review of the entire record of jury selection, we conclude that the court was apparently observing that three black jurors had been excused by the state, not that three black jurors had been accepted. Thus, the word "accepted," which appears in the transcript is apparently an error.
[4] The references in the quoted excerpt to "racial control reasons" are apparently erroneous and apparently should instead have been to "race-neutral reasons".