708 So.2d 764 (1998)
STATE of Louisiana
v.
Arizona BATISTE.
No. 96-KA-1010.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 1998.
*766 Gwendolyn Kay Brown, Louisiana Appellate Project, Baton Rouge, for Appellant/Defendant Arizona Batiste.
John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, for Appellee State.
Before GRISBAUM, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Arizona Batiste, appeals from his conviction of second degree murder. We affirm and remand.
On January 25, 1994, the St. John the Baptist Parish Grand Jury filed a bill of indictment, charging defendant with the second degree murder, a violation of La. R.S. 14:30.1, of Leonardo Alexander (Alexander). Defendant was arraigned on February 18, 1994, at which time he pled not guilty. A jury trial was held from January 2, 1996 through January 5, 1996. The jury found defendant guilty as charged, with ten of the twelve jurors voting to convict. Defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served.
On December 20, 1993, defendant spent the day with friends, Andrew Turcuit (Turcuit) and Thomas Duhe (Duhe). That evening, the three men were at the trailer of Elva Perilloux (Perilloux), defendant's aunt, watching a football game. While there, Albert Nicholson (Nicholson) and Waylon Frank (Frank) came by and showed defendant some hats which they thought belonged to defendant. They told defendant that Alexander had broken into defendant's house and was trying to sell his hats on the corner. Defendant grabbed his gun (a "street sweeper" semi-automatic) and he, Turcuit and Duhe went out to find Alexander. When they found him, they asked him if he had broken into defendant's house. Alexander denied breaking in and told defendant that "we are going to call your mama because she gave me the stuff so we can go ask her."
Turcuit testified that the three men and Alexander returned to the trailer and asked one of the women inside, Danielle, to call and find out if defendant's mother was home. They went back outside where defendant got *767 into an argument with Alexander. Defendant was angry with Alexander and asked Alexander why he had broken into his house. While the argument was going on, Duhe was poking Alexander in the chest with the "street sweeper" gun. Duhe testified that defendant jerked the gun out of his hand and shot Alexander, first in the leg, and then two more times. Turcuit told the jury that at no time that night did he feel "scared for" defendant or for Duhe. Also, he testified that before the gun shots, Alexander seemed happy. Turcuit admitted that, in his initial statement to the police, he told them that Alexander had a gun. However, he stated that he lied to protect defendant. He testified at trial that Alexander did not have a gun that night. Duhe corroborated Turcuit's testimony. Duhe testified that Alexander did not threaten anybody on the night of the murder, and that he, Duhe, was not afraid of Alexander.
Regina Tiznaro (Tiznaro), Atrina Gerard (Gerard), and Danielle Perrilloux (Danielle) testified that they were present in the Perrilloux trailer on the night of the homicide. Tiznaro testified that, on that evening, the three men left the trailer at some point and came back with Alexander. When they returned, defendant came into the trailer and told Danielle to call his mother. Defendant told Alexander that if he had broken into his house, he would kill him. The four men went back outside. Tiznaro testified that she saw Duhe poking Alexander with the gun. She testified that Alexander was about to hit Duhe with a bottle when she saw defendant grab the gun from Duhe and shoot Alexander. Tiznaro stated that the gun was fired three times and that she never saw Alexander with a gun in his hands. Tiznaro further testified that she never saw anyone try to threaten, hit or shoot the defendant or Duhe.
On cross-examination, Tiznaro admitted that, in her December 21, 1993 statement, she told detectives that Alexander had a gun. However, Tiznaro said that she was telling the truth at trial and she didn't know why she had told the police that Alexander had a gun.
Gerard and Danielle corroborated Tiznaro's testimony and stated that Alexander never hit anybody nor did anything physical to defendant. Not one of the girls ever saw Alexander try to shoot anyone.
Roger Johnson (Johnson) testified that he was in the street playing football that evening when he saw Alexander walk by mumbling. He said that soon after, he heard four or five gun shots. He testified that Alexander had a gun.
After the shooting, defendant ran out to the River Road where he saw his friend, Jerry Lewis (Lewis), driving by in a car. Lewis testified that defendant flagged him over and threw two guns in his car, a shotgun and a revolver. Lewis left the scene and drove to Kenner where he threw the revolver in a canal and gave the other gun to someone named Glenn. The next day he got the gun back from Glenn and gave it to the police.[1]
Deputy Mike Davis of the St. John the Baptist Sheriff's Office testified that, subsequent to the autopsy, he seized three yellow metal rings from Alexander's jeans pockets. Defendant's mother, Rose Batiste, testified that her house was burglarized on December 20, 1993, that she was missing all of her sons hats and tapes and 3 rings. She identified the rings seized from Alexander's jeans as the rings that were missing.
The defense also called Nicholson and Frank who testified that on December 20, 1993 they were driving around looking for defendant. Nicholson testified that they met with Alexander who gave some hats to him. Nicholson recognized the hats as belonging to defendant so he went to the Perrilloux trailer and told defendant that "Leo had broke in his house and to go home and check his house." Frank corroborated Nicholson's story, adding that he had seen a gun at defendant's house earlier that day.
Defendant testified that on December 20, 1993 he was at home with Duhe. During the day they left his home and met Alexander. At that meeting Alexander sold a CD player to Duhe in exchange for a piece of crack cocaine. Defendant testified that Turcuit joined them and they all went over to his *768 aunt's house trailer to watch a football game. Shortly after, Tiznaro, Gerard and Danielle arrived and went into the kitchen.
Defendant testified that, at halftime, the three men went outside to shoot the gun into the air. After they returned to the house, Nicholson and Frank came by and showed defendant some hats, which defendant recognized as his. Nicholson and Frank told defendant that they got the hats from Alexander and that Alexander had broken into defendant's house. Defendant left the trailer and met Alexander. Defendant asked Alexander, "Did you break in my home?" Alexander replied "no". After another denial by Alexander, defendant said "All right, come with me and go call my mama and see."
Defendant, Alexander, Duhe and Turcuit walked back to the trailer where defendant asked Danielle to call his mother. He then went outside and started arguing with Alexander. Defendant testified that Duhe was poking Alexander with the gun during this argument. Alexander raised a bottle and was "coming out of his jacket" with a gun in his left hand, when defendant grabbed the gun from Duhe and shot Alexander three times. Defendant testified that he thought he was going to be shot. Defendant stated that, when Alexander pulled out the gun, it was pointing down and that Alexander never pointed the gun at anyone nor shot the gun.
Defendant threw down the gun and ran. Later, he came back to the trailer, grabbed the gun and moved the body to the side of the trailer. He ran again, saw Nicholson and said, "Man, I just killed somebody. I killed Leo." Defendant then saw Lewis in his car, flagged him down and threw the guns into the car. Defendant turned himself into the police the following morning.
On rebuttal the state called the deceased's father, Benjamin Alexander, who testified that his son was right handed. Based upon the foregoing testimony the jury found defendant guilty as charged.
On appeal, defendant first asserts that the trial judge erred in sustaining the state's objection to a line of questioning being pursued by defense counsel with a defense witness, on the ground that the testimony was irrelevant. Second, he asserts that the trial judge erred in sustaining the state's objection to a question posed by defense counsel to a defense witness on the ground that it was hearsay. Third, defendant contends that the evidence was insufficient to convict him of second degree murder.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant first argues that the trial court erred when it excluded testimony of defense witness, Frank, as being irrelevant. During trial the following questioning took place:
Q: MR. MILLET (Defense Counsel): Did the police question you about those hats?
A: (WAYLON FRANK): Yeah.
Q: Did they question you extensively about the hats?
A: Yes.
Q: They questioned you extensively?
A: Oh! Yeah.
Q: Could you describe that for me?
MS. GRAUGNARD (Prosecutor): I object to this. What is the relevance?
COURT: That's what I would like to know.
MR. MILLET: The witness has been I understand questioned by the police about the hats. I asked him the extent of the questioning. I want to know about that. I think it's relevant. It certainly is relevant to the burglary of that occurred on December 20, 1993 and the items that were taken from that house.
COURT: He already answered that he was questioned by the police. Now, you are asking him to go into.
MR. MILLET: The extent of the questioning.
COURT: I think he already answered the question. That's sufficient. The objection is sustained.[2]
*769 Defendant argues that the evidentiary rulings by the trial court prevented him from presenting a defense. Defendant contends that he shot Alexander in self-defense. He points out that some of the eye-witnesses' testimony changed between the time of their statements to the police and the time of the trial. Defendant asserts that the eyewitnesses changed their stories as a result of police pressure and that Frank's further testimony would have revealed the kind of pressure police were putting on the witnesses in this case.
At trial, defense counsel did not argue that the testimony was relevant to show police pressure. He only argued that it was relevant to the burglary.
La.C.E. art. 103(A) states that error may not be predicated upon a ruling which admits or excludes evidence, unless a substantial right of the party is affected. Sec. A(2) of the same article provides that error may not be predicated upon a ruling excluding evidence unless the substance of the evidence was made known to the court by counsel. State v. Lobato, 603 So.2d 739, 748 (La.1992), appeal after remand, 621 So.2d 103 (La.App. 2 Cir., 1993), writ granted in part, denied in part on other grounds, 627 So.2d 644 (La.1993). In criminal cases, as well as civil cases, a party has a legal right, when evidence has been excluded, to make an offer of proof of what counsel expects to prove, outside of the presence of the jury. State v. Adams, 537 So.2d 1262, 1265 (La. App. 4th Cir.1989), writ granted, 543 So.2d 2 (La.1989), affirmed in part, reversed in part on other grounds, 550 So.2d 595 (La.1989); State v. Searcy, 621 So.2d 83, 88 (La.App. 2nd Cir.1993); State v. Lynch,, 94 0543 (La. App. 1st Cir. 5/5/95), 655 So.2d 470, 480. In Lobato, the Louisiana Supreme Court held that, where the defendant did not make known the substance of the excluded evidence for the purpose of consideration by the trial and appellate courts, the defendant did not preserve the alleged error for review on appeal. State v. Lobato, 603 So.2d at 749.
Defendant failed to make a proffer of what Frank's testimony would have been. Thus, he failed to preserve it for appellate consideration. Furthermore, rulings on the admissibility of evidence will not be overturned absent an abuse of discretion. State v. Mosby, 595 So.2d 1135 (La.1992). Here, in the absence of any showing of what Frank would have testified, we cannot conclude that the trial court abused her discretion in his ruling.[3] Thus, we find that the trial judge did not err in limiting the defense counsel's questions.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the trial court erred when it excluded hearsay statements, which the defense sought to produce from the testimony of Nicholson. Defendant argues that the exclusion of this evidence interfered with his constitutional right to present a defense. Defendant argues, alternatively, that the trial court erred in excluding the evidence because, 1) it was not hearsay, and 2) even if it were hearsay, it should have *770 been admitted under the "state of mind" exception to the hearsay rule.
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801(C). Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984). However, when an extrajudicial declaration or statement is offered for a purpose other than to establish the truth of the assertion, its evidentiary value is not dependant upon the credibility of the out-of-court asserter and the declaration or statement falls outside the scope of the hearsay exclusionary rule. State v. Martin, 458 So.2d at 460. A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. Id. An exception to the hearsay rule involves out of court declarations intended to prove the state of mind of the declarant. State v. Martin, 458 So.2d at 460.[4]
During trial, Nicholson testified that, on the night of the homicide, the victim gave him some hats, which he believed belonged to defendant. Defense counsel asked Nicholson to tell him about the conversation which he had with Alexander and the following dialogue took place:
Q: MR. SNOWDY (Defense Counsel): Can you tell me about the interaction, the conversation you had with Leo Alexander?
MS. GRAUGNARD (Prosecutor): I object to that. It calls for hearsay. It's not an exception to the hearsay rule.
COURT: With the decedent.
MS. GRAUGNARD: Yes, Your Honor.
MR. SNOWDY: We have to be able to understand what took place that night.
MS. GRAUGNARD: I object. It is hearsay.
COURT: Hold on a minute.
MS. GRAUGNARD: It is not a dying declaration.
COURT: The objection is sustained.[5]
Again, defendant did not proffer the evidence. Further, he failed to assert at trial that the statement was either not hearsay, or, if it were hearsay, it was an exception to prove the state of mind of the declarant, both of which were argued in brief only. Thus, the issue was not properly preserved for review.[6]

*771 ASSIGNMENT OF ERROR NUMBER THREE

Defendant asserts that the evidence presented at trial was insufficient to support his conviction for second degree murder. He argues that the evidence did not preclude defendant's theory of self-defense beyond a reasonable doubt.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232; State v. Hebrard, 94-410 (La.App. 5th Cir. 1/31/95), 650 So.2d 352; State v. Mussall, 523 So.2d 1305 (La.1988).
The defendant in this case was charged with second degree murder. La. R.S. 14:30.1 states that:
A. Second degree murder is the killing of a human being.
(1) when the offender has a specific intent to kill or to inflict great bodily harm.
In this case, defendant does not contest that he shot and killed Alexander. Rather, he claims that the homicide was justifiable because he killed Alexander in self-defense. Self-defense is defined in La.R.S. 14:20, which states in part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
When a defendant claims selfdefense, the state must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. State v. Rader, 609 So.2d 857, 861 (La.App. 5th Cir.1992); State v. Garcia, 483 So.2d 953, 956 (La.1986). The relevant inquiry on appeal is, whether a rational factfinder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in selfdefense. State v. Rader, 609 So.2d at 861; State v. Garcia, 483 So.2d at 956. The determination of defendant's culpability focuses on a two-fold inquiry, (1) from the facts presented, could defendant reasonably have believed his life to be in imminent danger, and (2) was deadly force necessary to prevent the danger? State v. T.N. 94-669 (La. App. 5th Cir. 1/18/95), 650 So.2d 288, 289-290. While there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger. Id.
In this case, defendant testified that he shot Alexander because he was afraid he was going to be shot. He also testified, however, that when Alexander pulled out a gun, it was pointing down and Alexander never shot nor pointed the gun at anyone. Conversely, several witnesses testified that defendant's shooting of Alexander was unprovoked. Turcuit testified that at no time the evening of the murder did he feel that defendant or Duhe were in danger from Alexander. Turcuit also testified that Alexander was not armed on the night of his death. Duhe testified that he was not frightened of Alexander on the night of the homicide and that at no time on that night did Alexander threaten anybody. Three eyewitnesses to the murder, Tiznaro, Gerard and Danielle, told the jury that they never saw Alexander threaten, hit, point or try to shoot a gun at defendant or at Duhe.
The jury was required to evaluate facts which support both the state and defendant's theory of the case. The state contended that defendant had the specific intent to kill Alexander when he shot him three times with an automatic weapon. Defendant claimed that he did so only in self defense, being convinced that the killing was necessary to protect himself and Duhe from losing their lives or receiving great bodily harm.
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that *772 judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Jiron, 96-319 (La.App. 5th Cir. 10/1/96), 683 So.2d 769, 771. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Styles, 692 So.2d at 1233; State ex rel. Graffagnino v. King, 436 So.2d at 563.
In this case, the jury made a credibility determination and believed the testimony of certain witnesses to the homicide. By finding defendant guilty, the jury determined that the eye-witness testimony was sufficient to establish, beyond a reasonable doubt, that the homicide was not committed in self-defense. We should not reweigh this evidence. Thus, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense, and thus, find that defendant is guilty beyond a reasonable doubt.

ERROR PATENT DISCUSSION
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Boudreaux, 95-153 (La.App. 5th Cir. 9/20/95); 662 So.2d 22, 28.
The record reflects that the trial judge failed to advise defendant of the time delay for filing for post-conviction relief, as is mandated by La.C.Cr.P. art. 930.8C. This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform defendant is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Birden, 675 So.2d 1187, 1190-1191 (La.App. 5th Cir.1996); State v. Crossley, 94-965 (La.App. 5th Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459.
Accordingly, we hereby affirm defendant's conviction and sentence. We remand with an instruction to the trial judge to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
AFFIRMED AND REMANDED.
NOTES
[1] Lewis was charged as an accessory after the fact in this case.
[2] Record, pp. 891-892.
[3] We note that, when a reviewing court concludes on a review of the record that the trial court improperly prevented a defendant from offering evidence which is critical to the theory of his case, we must reverse because the error is not harmless beyond a reasonable doubt. State v. Vaughn, 431 So.2d 358, 371 (La.1982). State v. Gibson, 391 So.2d 421 (La.1980). In Vaughn, the court stated further that, when the trial court errs by refusing to admit defense evidence, the test for determining whether there is reversible error is that the appellate court must be convinced that the excluded evidence would not have affected the jury's determination. State v. Vaughn, 431 So.2d at 371 n. 8.

In this case, defendant argues that the excluded evidence was necessary to show a larger conspiracy of police pressure. As support for this contention, the defense refers to the testimony of Lewis. Defendant argues that Lewis testified that he was being pressured by police to deny the existence of the second gun. However, the record reveals that Lewis did not testify that he was pressured by police to deny the existence of the second gun. Rather, Lewis testified that the police did not ask him to recover the second gun from the canal because they were going to have a diving team recover it. Also Lewis testified that the police told him "there was only one gun." Furthermore, in light of the other eyewitness testimony offered in this case, it is unlikely that an allegation of police pressure on a witness who was not present at the commission of the offense would have affected the jury's determination.
[4] La.C.E. art. 803(3) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament."
[5] Record, pp. 844-845.
[6] We also conclude that the evidence sought to be introduced, the conversation between Alexander and the witness, was not hearsay since it was not introduced to prove the truth of the matters asserted, but the state of mind therein. Nevertheless, the exclusion of the evidence was harmless error.

The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748, 759; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La.1993); State v. Johnson, 664 So.2d 94 at 100-101.
Defendant contends that the excluded evidence was necessary to show the victim's state of mind and support his self-defense justification for the killing. However, six eye-witnesses to the crime, including defendant, testified to the victim's demeanor before the commission of the offense. Additionally, Johnson testified that before the time of the murder he saw Alexander walk by and he was angry. Therefore, there is sufficient other evidence regarding the victim's demeanor both before and during the altercation that led to his homicide. Accordingly, Nicholson's testimony was not necessary to show Alexander's state of mind.