802 So.2d 735 (2001)
STATE of Louisiana
v.
Ulysses JOSEPH.
No. 01-KA-360.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2001.
*737 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Counsel for Ulysses Joseph, Defendant-Appellant.
Harry J. Morel, Jr., District Attorney, Kim K. McElwee, Assistant District Attorney, Hahnville, LA, Counsel for the State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
On May 22, 2000, the St. Charles Parish District Attorney filed a bill of information charging defendant, Ulysses Joseph, with violation of La.R.S. 14:64 (armed robbery) and La.R.S. 14:44.1 (second degree kidnapping) by robbing and kidnapping Kevin Cicet while armed with a knife. Defendant was arraigned on October 3, 2000 and pleaded not guilty.
On August 31, 2000, the defense filed a motion to quash the bill of information, alleging that St. John the Baptist Parish, not St. Charles Parish, was the proper venue for the armed robbery prosecution. The motion was argued on September 1, 2000 and was denied.
Defendant was tried by a twelve-member jury on October 4 and 5, 2000. At the conclusion of trial, the jury returned verdicts of guilty of the lesser charges of simple robbery (La.R.S.14:65) and simple kidnapping (La.R.S.14:45). On October 17, 2000, defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal. On November 7, 2000, the trial court heard and denied both motions. On November 15, 2000,[1] the court sentenced defendant to seven years at hard labor for the robbery and to five years at hard labor for the simple kidnapping. The court ordered that the sentences be served consecutively.
*738 Defendant made a timely oral motion for appeal. He filed a written motion for appeal on November 20, 2000.

FACTS
Kevin Cicet testified that, on the morning of May 7, 2000, he drove his 1986 Chevrolet Caprice automobile to a canal on Prescott Road in Montz, in St. Charles Parish, in order to fish. While Cicet was fishing, defendant, Ulysses Joseph, approached him, brandishing a twelve-inch serrated kitchen knife. Defendant held the knife to Cicet's right side. Defendant had a bicycle with him and demanded that Cicet put it into the trunk of his car. Defendant then ordered Cicet to drive him to LaPlace. Cicet complied.
While Cicet drove, defendant continued to hold the knife to his side. He directed Cicet to a carwash in LaPlace, in St. John the Baptist Parish. Before exiting the car, defendant took Cicet's driver's license and $80 in cash. He warned Cicet not to notify police, or he would kill him. Defendant also told the victim that Lieutenant Juan Watkins of the St. John Sheriff's Office was a friend of his. Defendant rode away on his bicycle.
At trial, Cicet identified the defendant as the man who robbed him.
Cicet drove to his parents' house and told them what had happened. Shirley Cicet, his mother, telephoned 9-1-1 to report the incident. She related that her son had been robbed at the canal in Montz, because that was what he had told her.
Deputy Steven Brens of the St. Charles Parish Sheriff's Office met with Kevin Cicet, who recounted what had happened that day and gave a description of the perpetrator. Brens testified that Cicet told him the robbery took place at the canal in Montz. Brens contacted Deputy Gregory Baker of the St. John the Baptist Parish Sheriff's Office to enlist his help in developing a suspect. Baker relayed the information to Lieutenant Juan Watkins.
Watkins testified that he and defendant grew up in the same neighborhood, and that he has known defendant since childhood. Shortly before hearing from Baker, Watkins saw defendant riding his bicycle past his (Watkins') house. Defendant's clothing and bicycle fit the victim's description. Watkins attempted to locate defendant that day, but was unsuccessful.
On May 10, 2000 Detective Renee Kinler of the St. Charles Parish Sheriff's Office compiled a photographic lineup that included a picture of defendant. She presented the lineup to Kevin Cicet at her office in St. Rose. He immediately identified defendant as the perpetrator. Detective Kinler conducted a tape-recorded interview with Cicet that day, which was transcribed.[2] Kinler testified that Cicet told her defendant held a knife to his neck once they reached LaPlace and robbed him there.
Defendant was arrested that day by St. John authorities. Detective Kinler advised defendant of his Miranda rights. Defendant waived his rights and agreed to be interviewed. However, defendant refused to allow Kinler to tape-record the interview. Kinler testified that she wrote a synopsis of the interview at her office afterwards.
According to Kinler, when questioned about the events of May 7, 2000, defendant admitted having encountered Cicet at the Prescott Canal. He told her that he did not have a knife, that he and Cicet engaged in conversation, and that Cicet willingly *739 agreed to drive defendant and his bicycle to LaPlace. The two stopped at a store along the way. Cicet dropped defendant off in LaPlace. Defendant denied having robbed Cicet.
Defense witness Robert Lee testified that he was cutting grass in LaPlace on May 7, 2000 and saw a small green car stop. A white man and defendant exited and the two men talked for some time. Lee said the conversation appeared amicable. The white man took defendant's bicycle out of the car's trunk and defendant rode the bike into the nearby housing project. The white man stayed there for 20 to 30 minutes, then left in the car. Lee did not see defendant with a knife.

ASSIGNMENT OF ERROR NUMBER ONE

The Trial Court erred in not finding a pattern of purposeful discrimination when the prosecutor used peremptory challenges to exclude eight jurors on the basis of race.
By this assignment of error, defendant claims the trial court erred in failing to recognize that the State used its peremptory challenges to systematically exclude eight African-Americans from the jury on the basis of race.
It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The United States Supreme Court has established a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner violative of the Equal Protection Clause.
First, a defendant must establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor used his or her peremptory challenges to exclude potential jurors on the basis of race. Batson, 476 U.S. at 94, 106 S.Ct. at 1721, 90 L.Ed.2d at 86. If the defendant fails to make a prima facie case, then the challenge fails.
Second, if a prima facie case is established, the burden then shifts to the State to come forward with a race-neutral explanation for its peremptory challenges. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). To be facially valid, the prosecutor's explanation need not be persuasive, or even plausible; thus, unless the discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.
Third, if a race-neutral explanation is tendered, then the trial court must determine whether the defendant has established purposeful discrimination. Purkett, supra; Batson, supra.
In determining whether a defendant has met his burden of showing purposeful race discrimination in the exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the State's reasons proffered as race-neutral, is strong enough to persuade the trier-of-fact that the claimed discriminatory intent is present. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 290.
In Batson the Supreme Court did not detail what constitutes a prima facie showing of discrimination, but commented:
For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the *740 prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning a prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
In Green, supra, the Louisiana Supreme Court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. The court outlined several factors that could lead to a finding that a prima facie case has been made pursuant to Batson:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by the prosecutor against members of a suspect class, statements or actions of the prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
94-0887 at p. 25, 655 So.2d at 288.
A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so his findings are entitled to great deference by the reviewing court. State v. Jones, 00-162, p. 7 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, 867, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783.
The prospective jurors whom defendant claims were improperly excused by the state are Tuesday Hills, Angel Turner, Paulette Byrd, Danny Williamson, Karen Roubion, Christina Selestan, Kevin Smothers, and Lachandra Marbley.
Tuesday Hills and Angel Turner were part of the first panel of jurors called during voir dire. The prosecutor, Kim McElwee, used peremptory challenges to excuse both women. Defense counsel, Maria Chaisson, noted that Turner and Hills were African-American, and reserved the right to object should a pattern of such challenges occur. Defense counsel did not make a Batson challenge at that time. The prosecutor stated for the record that she accepted three African-Americans from the first panel: Arlene Carey, Anthony Fiffie, and Charlene Davis. All three were seated as jurors.
Paulette Byrd, Danny Williamson, Karen Roubion, Christina Selestan, Kevin Smothers, and Lachandra Marbley were included in the second voir dire panel. When the prosecutor used a peremptory challenge to excuse Byrd, the defense made a Batson challenge, arguing that Byrd was the third African-American excused by the State. Counsel asked that the prosecutor be required to provide a race-neutral explanation for the challenge. The judge stated that he did not believe there was evidence of a pattern of discrimination but, in an abundance of caution, asked the prosecutor to proffer a race-neutral explanation.
McElwee stated that Byrd seemed confused by the attorneys' questions during voir dire and that she did not "feel good" about Byrd's answers. During questioning, Byrd first stated that she would have to hear "from both sides" in order to make *741 a decision as a juror. She then said she understood that defendant was not required to put on evidence and that she would not, as a juror, require defendant to do so. The court accepted the explanation as race-neutral and denied defendant's Batson objection. See, State v. Anderson, 34,670, p. 8 (La.App. 2 Cir. 5/9/01) 786 So.2d 917, 923-924, in which the court found that the inability of a juror to understand and comprehend the proceedings to be a race-neutral reason for excusing a juror.
The prosecutor subsequently used a peremptory challenge to excuse Williamson. Defense counsel again objected and asked for a race-neutral explanation. Although the judge said he still did not see a pattern of discriminatory challenges, he asked the prosecutor to offer a race-neutral explanation for excusing Williamson. McElwee stated that she did not like Williamson's attitude during voir dire. He sat with his arms crossed, looking at her with an air of dislike. McElwee further explained that Williamson was short with her when she asked him about his family, responding, "I ain't got no children." The court accepted this as a race-neutral reason for the challenge.
This Court has held that perceived hostility, lack of interest, and unresponsiveness are race-neutral reasons to exclude prospective jurors. State v. Banks, 96-652, p. 10 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 409.
The prosecutor next excused Roubion.[3] Defense counsel objected, arguing that Roubion was the third African-American in a row whom the prosecutor had challenged. The judge again called for a race-neutral explanation. McElwee stated that she was concerned that Roubion's husband had an uncle who was serving a prison sentence for murder and that this might adversely effect Roubion's ability to be impartial. Although defense counsel countered that the uncle's conviction was 21 years old and could not have an influence on Roubion, the judge found the explanation to be race-neutral.
When the prosecutor excused Selestan,[4] defense counsel argued that she had used four consecutive peremptory challenges to cut African-Americans. The court requested a race-neutral explanation. McElwee responded that Selestan had gone to high school with John Chaisson, co-counsel for the defense. McElwee further explained that she generally refrains from choosing a juror who has ties to a criminal defense attorney. Maria Chaisson argued that her co-counsel claimed not to know Selestan. McElwee responded that Selestan had been smiling at John Chaisson all day. The court found the explanation to be race-neutral. See, State v. White, 96-0592, p. 7 (La.App. 1 Cir. 12/20/96), 686 So.2d 96, 100, in which the court found race-neutral the State's challenge of a juror who was acquainted with the defense attorney, as he had previously represented her cousin.
After excusing Selestan, the prosecutor accepted Theresa McDonald, an African-American. At that point there were four African-Americans seated as jurors.
When the prosecutor used a peremptory challenge to excuse Smothers, defense counsel again asked for a race-neutral explanation. The judge stated he did not see a pattern of discrimination, as the jury at that point consisted of four whites and four *742 African-Americans. The prosecutor nevertheless offered a race-neutral explanation. She stated that Smothers wore a large gold medallion around his neck and that he had been glaring at her. She felt as if he would "come out of the box" at her if she asked him a question. The judge accepted the reasons given by the prosecutor and disallowed the challenge.
At that point the prosecutor noted that the defense had used all of its peremptory challenges up to that point to excuse white prospective jurors. The prosecutor then accepted Valerie Wilright, another African-American juror. When the defense excused Diane Tregre, a white woman, the State again objected. Defense counsel explained that she had not been given the opportunity to challenge an African-American juror because the State had excused them before she had an opportunity to do so. The court accepted this as a race-neutral explanation.
Finally, the defense objected when the State excused Lachandra Marbley. The prosecutor had attempted to challenge Marbley for cause earlier in the proceedings, explaining that Marbley's brother had been murdered in New Orleans three years before and that Marbley appeared to be very disturbed by the loss. The court had denied the challenge for cause, but accepted Marbley's emotional state as a race-neutral explanation for the peremptory challenge.
The record shows that a total of five African-Americans ultimately sat on the jury.
Although the trial judge repeatedly responded to defense counsel's Batson objections by stating he did not see a pattern of discriminatory strikes, he did not specifically rule on whether defendant made a prima facie case of purposeful discrimination. He nevertheless entertained the State's race-neutral reasons and ruled on them. In such a situation, the issue of whether the defendant established a prima facie case of racial discrimination is moot and the focus turns to the second step of the Batson test. State v. Hobley, 98-2460, p. 18 (La.12/15/99), 752 So.2d 771, 782, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000).
Under the jurisprudence all the explanations proffered by the prosecutor can be considered race-neutral. The record shows no statements or actions on the part of the prosecutor that would indicate discriminatory intent on her part. In fact, defense counsel's intent in using each of her peremptory challenges to excuse white prospective jurors seems more suspect than the prosecutor's motives. The final composition of the jury, nearly half of whom were African-American, further demonstrates that the prosecutor did not intentionally excuse the jurors at issue on the basis of race.
The trial judge did not employ the third step of the Batson analysis. However, the record does not show that the defendant made a showing of purposeful discrimination. Accordingly, we find no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER TWO

The verdict was contrary to the law and evidence presented at trial.
By this assignment, defendant argues the evidence at trial was not sufficient to prove the elements of the offenses of which he was convicted. Defendant raised the issue of sufficiency in motions for post-verdict judgment of acquittal and for new trial, both of which were denied by the *743 trial court.[5]
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the crime were proven beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
The applicable section of La.R.S. 14:45 provides that simple kidnapping is "[t]he intentional and forcible seizing and carrying of any person from one place to another without his consent." La.R.S. 14:65 defines simple robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."
Defendant argues that the State's case was based solely on Cicet's testimony, which proved unreliable. Cicet was indeed the only fact witness to the offenses. He afterwards related varying versions of the events of May 7, 2000. Cicet's mother and Deputy Brens testified that the victim reported he was robbed in Montz and was then forced to drive to LaPlace. At trial, Cicet testified he did not tell Brens he had been robbed in Montz. Cicet told Detective Kinler he was accosted at the canal in Montz, then was forced at knifepoint to drive to LaPlace, where he was robbed. At trial Cicet testified alternately that he was robbed in LaPlace and that he was robbed in the car en route to LaPlace. Cicet told Kinler defendant held a knife to his throat. At trial, he testified that he gave the officer that information in error because he was nervous during their interview and that the knife was actually pointed at his side.
While there were inconsistencies in Cicet's statements, defendant admitted in his own statement to Kinler that he was with Cicet on May 7, 2000. Defendant claimed, however, that Cicet voluntarily drove him to LaPlace and that he did not take anything from Cicet. Defendant argues it was obvious from the evidence that his encounter with Cicet involved a drug deal gone awry and that Cicet claimed he was robbed in order to explain the loss of $80 to his mother. There is no real support for this theory in the record. Robert Lee, a convicted felon, testified that he saw Cicet and defendant conversing casually in LaPlace. He did not, however, hear what they said. Nor did he claim to have witnessed a drug transaction. Moreover, Cicet testified that he did not engage in casual conversation with defendant.
Defendant argues that no knife or driver's license was recovered from him at the time of arrest. That is of no moment, since defendant was arrested three full days after the offenses.
This Court has held that the testimony of the victim, as the only eyewitness to the crime, is sufficient to establish the elements of the offense. State v. Dyer, 00-1866 (La.App. 5 Cir. 4/25/01), 794 So.2d 1. When a trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of the witness. State v. Webber, 99-23, p. 9 (La.App. 5 Cir. 7/27/99), 742 So.2d 952, 956.
*744 While there clearly were discrepancies in the State's case, it was for the jury to weigh the credibility of the witnesses. It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. Webber, supra; State v. Newman, 99-841, p. 12 (La.App. 5 Cir. 12/15/99), 750 So.2d 252, 259.
Kevin Cicet testified that defendant forced him to drive him to LaPlace. Although the jury apparently did not believe there was a weapon involved, they found defendant used force or intimidation. Cicet testified that during the drive to La-Place, he was not free to escape defendant and that he was frightened. Defendant claimed Cicet willingly agreed to drive him to LaPlace and denied the use of force.
With regard to the robbery, Cicet testified that defendant ordered him to turn over $80 in cash and his driver's license. Defendant wanted the driver's license in order to seek Cicet out and kill him should he report the incident to police. During his interview with Detective Kinler, the victim said he assumed defendant was going to try to kill him if he did not have any money.
We find that the evidence at trial, viewed in the light most favorable to the State, was sufficient to prove the elements of simple robbery and simple kidnapping. The act of defendant ordering the victim to drive him to LaPlace in itself satisfied the element of force or intimidation. Compare State v. Clark, 00-818 (La.App. 3 Cir. 12/6/00), 780 So.2d 418.
Based on the foregoing, we find no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER THREE

The Trial Court erred by not allowing the defense to question the victim about his drug usage when he first took the stand.
Defendant here complains that the trial court deprived him of his right of confrontation in denying him the opportunity to question the victim, Kevin Cicet, about his possible drug use.
During cross-examination, defense counsel asked Cicet whether he had talked to defendant about marijuana. Cicet responded that he did not. Defense counsel then asked, "Didn't you tell Mr. Joseph that you would like to buy some marijuana so that you could take it fishing with you when you went to Grand Isle?" Cicet again responded that he had not. The State objected to the line of questioning and there was a bench conference off the record, during which the matter was apparently discussed. The court then sustained the State's objection.
Through defense witness Robert Lee's testimony, defendant attempted to establish that he and Cicet were involved in a drug transaction in LaPlace. Out of the jury's hearing, the judge told defense counsel:
I want to let you know when the State had its case in chief, you were going into the area of a transaction going on between the victim and the defendant. I didn't allow you to do it at that time. It looks like it was impeachment, only I'm letting you do it now on the record. You have the right to recall that victim to the stand and inquire into that if that is part of your defense. I'm going to allow you to do that. You have to call him in your case-in-chief.
Defense counsel responded:
I appreciate that, Your Honor. I object to being required to recall him. It is clearly a good faith basis of that question. And if you pull the transcript, it would be clearly laid out. I don't think *745 the recalling the man, Mr. Cicet, to ask him that one question would be giving the prosecutor to get in other information. I want to put it on the record. I understand your ruling.
The Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee the accused in a criminal prosecution the right to present a defense. See, Washington v. Texas, 388 U.S. 14, 15, 87 S.Ct. 1920, 1921, 18 L.Ed.2d 1019 (1967); State v. Shaw, 00-1051, p. 13 (La.App. 5 Cir. 2/14/01), 785 So.2d 34, 43. The essential purpose of confrontation is to secure for the defendant the opportunity of cross-examination. Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1109-1110, 39 L.Ed.2d 347 (1974). Cross-examination is the primary means by which the believability of a witness and the truth of his testimony are tested. State v. Shaw, supra.
As a general rule, a party may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. La.C.E. art. 607(C); State v. Smith, 98-2045, p. 3 (La.9/8/99), 743 So.2d 199, 201. The scope and extent of cross-examination is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. State v. Garrison, 400 So.2d 874, 878 (La.1981); State v. Hotoph, 99-243, p. 15 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1046, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, 00-0150 (La.6/30/00), 765 So.2d 1066.
For error to be predicated on a ruling excluding evidence, La.C.E. art. 103(A)(2) requires that a substantial right of a party be affected and that counsel inform the trial court of the substance of the excluded evidence. State v. Lobato, 603 So.2d 739, 748 (La.1992); State v. Batiste, 96-1010, p. 8 (La.App. 5 Cir.1/27/98), 708 So.2d 764, 769, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954. In Batiste, the defendant claimed he was deprived of the right to present a defense by the trial court's exclusion, as irrelevant, of a defense witness' testimony. This Court held that the defendant failed to preserve his claim for appellate review because the defense failed to proffer the substance of the excluded testimony.
Similarly, in State v. Johnson, 00-0680, p. 11 (La.App. 1 Cir. 12/22/00), 775 So.2d 670, 678, the defendant was precluded from challenging on appeal the trial court's ruling excluding a police officer's hearsay testimony. The First Circuit found that the defendant had not complied with LSA C.E. art. 103(A)(2) because he had failed to proffer the testimony the witness would have given.
In the instant case, defendant had ample opportunity to make a proffer to the trial court as to the line of questioning he wished to pursue with Mr. Cicet. Moreover, defense counsel was given the opportunity during her case-in-chief to recall Mr. Cicet and question him about drug activity, but she declined. That leaves this Court with nothing to review. We find that defendant's right of confrontation was not prejudiced by the ruling at issue. This assignment of error has no merit.

PATENT ERROR DISCUSSION
We reviewed the record for patent errors pursuant to La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find that the trial court failed to inform defendant of the two-year prescriptive period on applications for post-conviction relief, as required by La. C.Cr.P. art. 930.8.
According to our usual procedure, we order the trial court to send defendant *746 written notice of the provisions of La. C.Cr.P. art. 930.8 within ten days of the date this judgment becomes final and to place evidence of such notification in the trial court record. State v. Stelly, 98-578, p.6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The case is remanded to the district court for correction of the patent error noted above.
AFFIRMED AND REMANDED.
NOTES
[1] The minute entry reflects that the sentencing hearing was held on November 21, 2000. However, the transcript bears the November 15 date.
[2] Although Cicet's statement was used by defense counsel for impeachment purposes, it was not admitted in evidence at trial.
[3] "Roubin" is the spelling that appears in the minute entry, but the transcript shows the spelling as "Roubion."
[4] In the minute entry, the name appears as both "Selestan" and "Selestanby." In the transcript, it is spelled "Selestan."
[5] The question of sufficiency is properly raised by a motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 859 n. 21.