YELVERTON, Judge.
Defendant, Jacob Guillory, Jr., was convicted of second degree murder in violation of La.R.S. 14:30.1, and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal defendant asserts six assignments of error.
After midnight on July 20, 1985, Caffery Scott, the victim, was walking home on a rural road in Evangeline Parish. Jacob Guillory, Jr., and Melissa Charlie were in a car, Guillory driving. The jury found that the defendant, Guillory, after making a remark indicating what his intentions were, picked up a pistol off the seat of the car, and through the open window on the driver’s side shot the victim in the stomach and killed him. Neither Guillory nor Charlie knew the victim.
ASSIGNMENT OF ERROR NO. 1
By this assignment defendant contends the trial court erred in denying his motion to suppress a statement made by him to Robert LaFleur, a jailor employed by the Evangeline Parish Sheriffs Department, while defendant was in jail on this charge pending trial.
At the hearing on the motion to suppress, LaFleur testified to the circumstances surrounding the making of the statement. On a Sunday afternoon in August 1985 defendant’s father visited defendant at the jail. At the request of defendant’s father, LaFleur entered the visiting area to take defendant back to his cell. Defendant declared he was not going back to his cell. When LaFleur insisted he return to his cell, defendant backed up against the wall, stated he was not going to return to his cell, kept crying, and stated to LaFleur that he needed to talk to someone. In response to defendant’s statement that he needed someone to talk to, LaFleur told him, “Well, if that’s what you want, you know, that’s what I’m here for. So you can talk to me.”
LaFleur stated that he did not ask a single question after he and defendant sat down and began to talk. While not able to recall any details, LaFleur remembered that numerous topics were discussed including the possibility of defendant becoming a trustee. Somewhere in the conversation defendant interjected “Robert, I don’t have anything against black people. I did what I did because of something that happened a long time ago”. After defendant made that statement, the discussion turned to other matters.
It is defendant’s contention that the above quoted statement should have been suppressed because it was obtained as a result of interrogation by law enforcement after defendant invoked his right to counsel. Interrogation is "... questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once an accused has invoked his right to have counsel present during custodial interrogation, an incriminating jailhouse statement made in response to police-initiated interrogation is inadmissible. U.S. v. Webb, 755 F.2d 382 (5th Cir.1985), U.S. cert. den. — U.S. -, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987). Interrogation includes words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed. 297 (La.1980). There is a difference between police-initiated custodial interrogation, and communications, exchanges, or conversations initiated by the accused himself. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 *1166 (1981), U.S. reh. den. 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981).
We do not regard defendant’s volunteered and apparently out-of-context remark as resulting from a police-initiated interrogation. The jailor, LaPleur, who said that he was just a jailor and not an otherwise trained law enforcement officer declared that he considered himself as available to the inmates whenever they needed to talk to someone about anything. He said he had no idea what defendant was going to say to him about so many different things. He said that inmates rarely talked to him about the charges against them, and he did not expect the defendant to make the statement that he did. There was no interrogation of the defendant in the sense of express questioning, nor was there any interrogation in the sense of words or actions on the part of the jailor that were reasonably likely to elicit an incriminating response from the defendant. Accordingly, the motion to suppress was properly denied.
ASSIGNMENT OF ERROR NO. 2
This assignment of error was not briefed on appeal, therefore, it is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Johnson, 438 So.2d 1295 (La.App. 3 Cir.1983).
ASSIGNMENT OF ERROR NO. 3
According to this assignment of error, defendant contends the trial court erred in limiting the cross-examination of a state witness, Melissa Charlie, regarding the details of her earlier conviction of forgery and theft. During cross-examination of Melissa Charlie, the following exchange occurred:
“Q. Okay. The — referring to the charges — the crimes that you pled guilty to on August 23,1985, you entered a plea of guilty to forgery and theft, is that correct?
“A. Yes.
“Q. What exactly did you forge?
“A. I didn’t forge nothing. I just took some checks and somebody else wrote them and I took the blame for it.
“Q. So you’re saying you’re not guilty of that crime?
“A. I’m guilty for taking em, but I didn’t write em. It took em for somebody that had a newborn baby and she didn’t have no food to feed it, so she wrote the checks, but I took em. But I took the blame because she had to be there with her baby.
“Q. Okay. You took em and did what with em?
“A. And gave them to her.
“Q. These were checks that were written by somebody else?
“A. Yes, they were.
“Q. Who were they written by?
“A. I rather not say.
“Q. Well, you may rather not say, but I think you should say.”
The State at this point objected to going into the specifics of the previous conviction, and the objection was sustained. This assignment of error is addressed to the trial judge’s refusal to permit the witness to answer the question regarding who wrote the checks.
La.R.S. 15:495 provides in pertinent part, “Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, ...”. State v. Jackson, 307 So.2d 604 (La.1975), held “... there is no error in the cross-examination of a witness which seeks details of an offense for which the witness is convicted, for the purpose of establishing the true nature of the offense.”. Jackson has been criticized. State v. Oliver, 387 So.2d 1154 (La.1980); on remand 430 So.2d 650 (La.1983); U.S. cert. den. 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983)
The court in State v. Oliver, supra, stated,
“Even the leeway allowed by Jackson has its limits. The trial court has the duty of restricting an inquiry into details of a past conviction within reasonable bounds.”
In State v. Connor, 403 So.2d 678 (La.1981), the court added:
*1167 “Only limited questioning as to the facts of prior conviction is permissible. Minor details of far ranging and irrelevant matters such as conditions of probation, alleged but uncharged offenses and charges dropped in response to a guilty plea may not be used to cast doubt on a defendant’s credibility.”
We reject the contention that it was error not to make Melissa Charlie tell who wrote the checks. Even under the rule of Jackson, supra, the trial court committed no error because defendant had already established the true nature of the offense. Melissa Charlie testified she stole some checks to help another in need of food and that another person wrote the checks. Revealing the name of the person who wrote the checks would not have established any further the true nature of the offense, nor could it have otherwise contributed to an attack on the witness’ credibility.
The ruling was not an abuse of discretion. This assignment of error lacks merit. ASSIGNMENT OF ERROR NO. 4
By this assignment defendant contends the trial court erred in allowing the introduction of a statement made by defendant to Linda Fontenot when the state failed to provide defendant with notice of the statement as required by and requested under the discovery articles. Through the testimony of Linda Fontenot it was revealed that defendant asked Linda to testify falsely as to his whereabouts on July 19th and 20th.
La.C.Cr.P. Art. 768 provides:
“Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.”
An inculpatory statement is an “... out of court admission occurring after a crime, which implicates or incriminates the speaker as to the commission of that crime.”. State v. Willis, 438 So.2d 605 (La.App. 3rd Cir.1983). Defendant’s attempt to have Linda Fontenot testify falsely as to his whereabouts at the time of the murder should not be considered an inculpatory statement under Art. 768 because it does not implicate him in the commission of the crime.
Defendant also argues the application of La.C.Cr.P. Art. 716(B) which provides that a defendant, upon proper motion, is entitled to notice of the existence, but not the contents, of any oral confession or statement of any nature made by him which the. district attorney intends to offer in evidence. This provision requires that the notice give information on when, where and to whom the confession or statement was made.
Because of the broad application of Art. 716(B), defendant was entitled to notice of the existence, although not the content, of the statement he made to Linda Fontenot. La.C.Cr.P. Art. 729.5 vests discretion in the trial judge to disallow the introduction of evidence which should have been disclosed under the discovery articles but was not. Because Art. 729.5 grants this discretion, a defendant must show he was prejudiced by the court’s ruling before he is entitled to a reversal. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), writ den. 449 So.2d 1356 (La.1984).
Defendant alleges prejudice in that had he been given notice of the statement he would have had time to prepare a defense or response to the testimony or to possibly submit other pretrial arguments against the admission of the evidence. While defendant asserts his trial strategy may have been different had he known of the statement, he does not explain how his strategy would have differed. Because defendant was only entitled to notice of the existence of the statement, not the substance, it is difficult to envision how notice of when, where and to whom the statement was made would have better enabled him to prepare a defense or response to the testimony. See State v. Nata, 452 So.2d 785 (La.App. 4th Cir.1984).
Finally, defendant argues that the statement should not have been admitted *1168 because it amounts to evidence of another crime. The argument is that, if he had been able to persuade Linda to commit perjury by falsely testifying regarding defendant’s whereabouts, he would be guilty as a principal to her crime of perjury. This argument has no merit. The fact is, she refused to so testify. The crime of perjury was not committed because Linda Fontenot did not testify falsely at trial. Linda’s testimony that defendant requested she testify falsely does not amount to the crime of perjury, therefore, no evidence of another crime was introduced.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
In this assignment defendant contends the trial court erred in admitting testimony of Joseph Galloway regarding a statement made by defendant. Defendant contends the introduction of the testimony was error because the state failed to provide an Article 768 notice of the statement to defendant. In response to defense counsel’s objection to the testimony, the state argued no notice was required because the witness was not called by the state, but rather by the defendant.
In State v. Willis, supra, the defendant assigned as error the introduction of testimony by a defense witness under cross-examination regarding a statement made to him by defendant when prior notice of the statement had not been given. Relying on State v. Smith, 327 So.2d 355 (La.1975), this court in Willis, supra, stated there would be no violation of the state’s duty to provide notice under Art. 768 if the state was unaware of the statement and did not intentionally try to solicit it from the witness. From the testimony in the instant case it appears clear the state knew of the statement and attempted to elicit it from Joseph Galloway. According to State v. Willis, supra, and State v. Smith, supra, the fact that a statement is elicited on cross-examination does not relieve the state from providing notice assuming the statement falls within the discovery articles.
The testimony complained of was this response by Joseph Galloway:
“A. ... when he got there I asked him what was wrong. That’s when he talked to me off to the side, he told me, he said, ‘Melissa told me I had shot a colored guy’, and I told Jake, I said, ‘No, I don’t believe that'. And Jake told me, he says, T don’t believe neither’ ...”
This testimony does not contain an inculpa-tory statement because defendant merely stated Melissa told him he had shot someone. In fact, he told Joseph Galloway he did not believe Melissa. The statement did not implicate or incriminate defendant as to the murder because he denied shooting someone by stating he did not believe what Melissa told him. Because the statement is not inculpatory, the provisions of Art. 768 do not apply.
Defendant alternatively argues he was entitled to notice under Art. 716(B). As explained in the discussion of assignment of error No. 4, defendant, though entitled to notice, must prove prejudice resulting from the failure to provide notice before he is entitled to a reversal. State v. Freeman, supra. According to defendant, he was prejudiced because the state’s case in his words "... was based, exclusive of evidence presented in error, entirely on the testimony of a codefendant [Melissa Charlie] with her own interest in seeing the defendant convicted.” Defendant fails to demonstrate the link between failure to give notice and the evidence upon which the verdict rests. It is unclear how the state’s failure to give notice resulted in prejudice claimed by defendant. Because defendant has failed to prove prejudice as a result of the lack of notice, he is not entitled to reversal. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
While this appeal was pending, defendant filed with this court a motion to remand the case for a hearing on his motion for a new trial. Another panel of this court denied the motion to remand. Defendant filed a supplemental brief on this appeal contending this court erred in denying the motion to remand, in effect assigning error and seeking a review of its own ruling by this court. We know of no procedure by *1169 means of which this can be done and accordingly this assignment is not considered,
The conviction is affirmed.
AFFIRMED.