853 So.2d 77 (2003)
STATE of Louisiana
v.
Clifford J. DUPLESSY.
No. 03-KA-185.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2003.
*78 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Martin E. Regan, Jr., Attorney, Kris A. Moe, Attorney, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information on August 1, 2001, charging defendant, Clifford Duplessy, with simple criminal damage to property where the damage exceeded $500, in violation of LSA-R.S. 14:56. Defendant pled not guilty, and the matter proceeded to trial on December 10, 2001. After considering the evidence presented, the six person jury found defendant guilty as charged. On January 25, 2002, the trial judge sentenced defendant to one year of imprisonment at hard labor at which time he made an oral motion for appeal.
Thereafter, the state filed a multiple offender bill of information alleging defendant to be a second felony offender based on a prior conviction for second degree battery. On March 8, 2002, defendant admitted the allegations in the multiple bill, and in accordance with the plea agreement, the trial judge vacated defendant's original sentence and resentenced him to two years. Additionally, the trial court ordered defendant to pay restitution in the amount of $500 and previously court-ordered monthly child support in the amount of $657. During the sentencing hearing, defendant withdrew his oral motion for appeal in compliance with the plea agreement in which defendant agreed not to appeal.
*79 On April 12, 2002, through newly retained counsel, defendant filed a motion to vacate illegal sentence, motion for out-of-time appeal, and motion for appeal bond. The state responded by filing a motion to withdraw the plea agreement. After a hearing on May 2, 2002, the trial court granted the state's motion to withdraw the plea agreement on the basis defendant violated the terms of the plea agreement. The trial court reinstated defendant's original one year sentence and, consequently, found defendant's motion to vacate illegal sentence to be moot.
Subsequently, on July 19, 2002, a multiple offender hearing was held. The state offered a certified copy of defendant's prior conviction and defendant stipulated to his identity. Thereafter, the trial court found defendant to be a second felony offender, vacated his original one year sentence, and resentenced him as a multiple offender to three years. Defendant now appeals.

FACTS
At approximately 12:30 p.m. on July 2, 2001, Charles Kirchem was leaving his place of employment at Doctor's Hospital to run errands when he heard a loud hissing noise as he was walking to his vehicle in the parking garage. He saw someone, whom he later identified as defendant, squatted down beside a vehicle near one of its tires. Mr. Kirchem was suspicious and slowed down by piddling with his keys. Defendant then walked towards Mr. Kirchem at which time Mr. Kirchem noticed defendant carrying a white rag in one hand and a white aerosol can in the other. Mr. Kirchem made eye contact with defendant and nodded at him as defendant proceeded to walk toward the elevator and stairs.
Mr. Kirchem continued to walk to his truck at which time he noticed that the car of his co-worker, Kim Hughes, had a flat tire. He called Ms. Hughes from his cell phone and told her to check her car. As Mr. Kirchem was exiting the parking garage, he again saw defendant coming down the stairs near the elevators. Mr. Kirchem was suspicious so he circled around the area. He saw defendant walk through the nearby Rite Aid parking lot before losing sight of him.
Meanwhile, Ms. Hughes went to the parking garage and discovered her 1994 Mustang had been damaged. Both tires on the passenger side of the car had been slashed and some sort of substance had been poured on her car that faded the paint and damaged the headlights and rear lights. The damage was estimated at $2,200. Ms. Hughes called the police who came to the scene. She told the police that she thought defendant, who was the ex-husband of her friend Sharon, had done it. By this time, Mr. Kirchem had returned to the scene. He subsequently gave the police a description of the perpetrator. Approximately one week after the incident, Mr. Kirchem was shown a photographic lineup from which he identified defendant as the person he saw near Ms. Hughes' car.
At trial, defendant, the owner of Top to Bottom construction company, presented alibi testimony that he was on a job with Gina Michel the time the incident took place. Ms. Michel, owner of G & L Home Improvements, testified that she and defendant were at a home in Violet around 11:30 a.m. on July 2, 2001 so defendant could give his opinion as to why the home's roof was leaking. Thereafter, the two went to lunch at Par-3 Diner in Chalmette. Ms. Michel testified she and defendant were at lunch until 1:00-1:30 p.m.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant argues the trial court abused its discretion *80 in denying his Batson challenges. Defendant, who is white, asserts that the trial court erred in allowing the state to use its peremptory challenges to strike three prospective black jurors.[1] Defendant contends the race neutral explanations offered by the state to justify the use of its peremptory challenges were weak and insufficient to overcome the impermissible discriminatory use of its strikes.
It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court established a three step analysis to determine whether a peremptory challenge has been used in violation of the Equal Protection Clause.
To prevail on a Batson challenge, a defendant must first establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor used his or her peremptory challenges to exclude potential jurors on the basis of race. Batson, 476 U.S. at 94, 106 S.Ct. at 1721, 90 L.Ed.2d at 86; State v. Joseph, 01-360 (La.App. 5 Cir. 10/17/01), 802 So.2d 735, 739, writ denied, 02-232 (La.12/13/02), 831 So.2d 979. In State v. Green, 94-887 (La.5/22/95), 655 So.2d 272, 288, the Louisiana Supreme Court discussed how a defendant may establish his prima facie case:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
If a prima facie case is established, the burden shifts to the state to come forward with a race neutral explanation for its peremptory challenges. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). To be facially valid, the prosecutor's explanation need not be persuasive, or even plausible; thus, unless the discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839; State v. Joseph, supra. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Purkett, supra; Batson, supra.
A trial court's determination on a claim of purposeful discrimination rests largely on credibility determinations, so his findings are entitled to great deference by the reviewing court and will not be overturned absent a finding of manifest error. State v. Toussaint, 98-1214 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 964, writ denied, 99-1789 (La.11/24/99), 750 So.2d 980
In the present case, during the course of voir dire, defense counsel raised a Batson claim based on the state's use of peremptory challenges to excuse black jurors Margaret Hunter, Lois Washington, and Lovina McIntyre. When the defendant made his Batson challenges, the trial *81 judge immediately requested a race neutral explanation from the state.[2]
With regard to Ms. Hunter, the prosecutor responded that she was not very observant when the trial judge asked questions regarding her employment, whether she had been a victim of crime, and whether she had ever served on a jury. The prosecutor also commented that Ms. Hunter was hesitant in her answers. In denying this Batson challenge, the trial court agreed that Ms. Hunter was not very attentive.
As to Ms. Washington, the prosecutor explained that she believed her to be sympathetic because she is a sitter with five children. The prosecutor noted a sitter cares for people. The prosecutor also noted the domestic issues involved in the case and believed Ms. Washington would be sympathetic because she was divorced and had five children. In responding to this explanation, the trial court commented that the state's race neutral explanation was weak. The trial judge stated that he was not persuaded by the fact Ms. Washington was a sitter and found that fact not to be the strongest of race neutral reasons. However, the trial court made its own observations of Ms. Washington noting that she was inattentive and appeared disinterested. The trial court stated Ms. Washington did not make eye contact when the jury venire was asked about the Fifth Amendment and she failed to nod her head or respond in any way. The trial court thereafter denied this Batson challenge.[3]
Lastly, concerning Ms. McIntyre, the prosecutor responded that she was a social worker who worked "on call" at Rivarde Juvenile Detention Center. The prosecutor explained that Ms. McIntyre's employment made her more oriented towards rehabilitation than punishment. The prosecutor believed Ms. McIntyre would "go outside this case based on sympathy." The trial court accepted the state's race neutral reason and denied defendant's Batson challenge. In weighing the race neutral explanation with the proof of purposeful discrimination, the trial court stated, "I'm familiar with Rivarde and the workers that they have in there are as much perhaps more often advocates for juvenile delinquents or juvenile status offenders." The trial court accepted the state's race neutral reason and denied defendant's Batson challenge.
Defendant now argues that the trial court erred in accepting these explanations as race neutral. In previous cases, these same basic explanations have been found to be race neutral. The inattentiveness of a prospective juror is a sufficient reason to overcome a Batson challenge. State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 408-409; State v. Galliano, 96-1736 (La.App. 1 Cir. 6/20/97), 696 So.2d 1043, 1048, writ denied, 97-1963 *82 (La.1/9/98), 705 So.2d 1098. This court has also held that perceived hostility, lack of interest, and unresponsiveness are race neutral reasons to exclude prospective jurors. State v. Williams, 545 So.2d 651, 655 (La.App. 5 Cir.1989), writ denied, 556 So.2d 53 (La.1990). Furthermore, challenges based on other reasons supplied, namely the jurors' professions, have also been upheld as race neutral. State v. Moody, 587 So.2d 183 (La.App. 3 Cir.1991); State v. Rose, 606 So.2d 845 (La.App. 2 Cir.1992).
In the present case, the trial judge was in the best position to observe the entire voir dire and thus, to make the most informed decision as to whether the state used its peremptory challenges in a discriminatory manner. We find that the trial judge did not abuse his discretion in deciding that the prosecutor's explanations were race neutral and in thereafter denying defendant's Batson claims. The arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him of simple criminal damage to property.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In addition to proving the statutory elements of the charged offense at trial, the state is required to prove the identity of the perpetrator. Where the key issue is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69.
On appeal, defendant argues that the state failed to prove his identity as the perpetrator. He challenges Mr. Kirchem's identification on several grounds. Defendant first contends he does not match the physical description of the perpetrator as given by Mr. Kirchem. Defendant alleges the evidence established he was clean shaven around the time of the incident while the perpetrator was described as having a goatee and moustache. Second, defendant points out that Mr. Kirchem's description of the perpetrator did not include one of his most distinguishing physical characteristic of dark circles under his eyes. Third, defendant asserts Mr. Kirchem's identification of him was tainted because of his work relationship with the victim. Defendant contends Mr. Kirchem was previously given a description of defendant by the victim so he could identify defendant in a lineup. Fourth, defendant relies on his alibi that he was working with Gina Michel at the time of the incident as evidence of his misidentification.
To prove identification in this case, the state offered the testimony of the only eyewitness, Charles Kirchem. Mr. Kirchem testified that he saw the perpetrator two times. He first saw the perpetrator in the parking garage at the scene of the crime and again as he was exiting the parking garage. Mr. Kirchem explained that the garage has overhead lighting that was on at the time of the incident and ventilation vents that provide additional light. He stated he became suspicious and paid close attention after hearing the hissing noise and seeing a man crotched down beside a vehicle. He even made eye contact with the perpetrator as the perpetrator walked near him. Mr. Kirchem then *83 gave a description of the perpetrator to the police. In that description, Mr. Kirchem stated he believed the perpetrator had a moustache or goatee but noted it was not very distinguished. Approximately one week after the incident, Mr. Kirchem identified defendant in a photographic lineup. He testified he had no doubt that defendant was the man he saw next to Ms. Hughes' vehicle. Mr. Kirchem also identified defendant in court as the man who he saw next to Ms. Hughes' car on the day of the incident.
In contrast to this testimony, defendant presented the testimony of Mary Parkman, a secretary at defendant's Top to Bottom construction company. She testified that defendant did not have a moustache in the summer of 2001 and further that she never remembered defendant wearing a goatee. Gina Michel, owner of G & L Home Improvements, also testified for defendant and stated that defendant was with her at the time of the incident. She stated defendant did not have a moustache or goatee on July 2, 2001.
The jury listened to all the evidence and apparently found the testimony of Mr. Kirchem to be more credible. During trial, Mr. Kirchem was fully cross-examined about the description he gave the police. He was specifically asked about the perpetrator's moustache and goatee. Mr. Kirchem explained that the perpetrator's facial hair was not very distinguished. Although two of the defense witnesses testified defendant was clean shaven, the photographic lineup showed defendant with a moustache thereby demonstrating that defendant did, at times, wear facial hair. The jury was also made aware that Mr. Kirchem's initial description of the perpetrator omitted his distinguishing physical feature of dark circles under the eyes. In addition, the jury heard about Mr. Kirchem's work relationship with the victim. After hearing all this testimony, the jury chose to accept Mr. Kirchem's identification testimony and reject defendant's alibi testimony. It is the fact finder's function to determine the weight of the evidence bearing on defendant's identification. It is not the appellate court's function to reevaluate the credibility choices by the fact finder. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that defendant was the perpetrator of the crime. Thus, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, defendant contends that this court erred in denying his motion for a remand to the trial court which he filed on two separate occasions while this appeal was pending.
On January 25, 2002, after his conviction and prior to sentencing, defendant filed a motion for new trial based on newly discovered evidence and the matter was set for hearing. However, on March 8, 2002, prior to a hearing on the motion for new trial and at the beginning of the first multiple offender hearing, defendant withdrew the motion for new trial.
On July 19, 2002, at the commencement of the second multiple bill hearing, defendant filed a second written motion for new trial. The trial court ruled that the motion was not docketed for that day and declined to hear it. The multiple bill hearing proceeded and defendant was found to be a second felony offender. He was resentenced as a multiple offender on July 22, 2002. Immediately after being sentenced *84 as a multiple offender, defendant made an oral motion for appeal which was granted.
Approximately one and one-half months later, on September 12, 2002, defendant filed a motion to set the motion for new trial for hearing. Four days later, without hearing, the trial court denied the motion to set stating the following three reasons: 1) it was divested of jurisdiction pending appeal, 2) the motion for new trial was untimely because it was filed after sentencing, and 3) there were no grounds alleged in the motion for new trial.
Thereafter, on December 9, 2002, defendant filed with this court a motion for remand to the district court for a new trial hearing. In his motion for remand, defendant asserted that he filed a motion for new trial based on newly discovered evidence but the motion was denied by the trial court because it was divested of jurisdiction pending the current appeal. He requested the matter be remanded to the trial court for a hearing on his motion for new trial. The motion was denied by this court on December 10, 2002. On March 11, 2003, defendant again filed with this court a motion for remand to the district court for a new trial hearing. On March 25, 2003, this court denied defendant's second motion.
On appeal, defendant is asking this court to review its own ruling. In State v. Guillory, 526 So.2d 1164, 1168 (La.App. 3 Cir.1988), writ granted and cause remanded, 531 So.2d 258 (La.1988), the Third Circuit was faced with this exact situation. In Guillory, defendant filed a motion to remand the case for a hearing on his motion for new trial while the appeal was pending. The motion to remand was denied. On appeal, defendant assigned as error the Third Circuit's denial of his motion to remand. The Third Circuit summarized that defendant was seeking the court to review its own ruling and stated, "[w]e know of no procedure by means of which this can be done and accordingly this assignment is not considered." The Louisiana Supreme Court subsequently granted writs and remanded the case to the district court for a hearing on the motion for new trial pursuant to LSA-C.Cr.P. art. 853. State v. Guillory, 531 So.2d 258 (La.1988).
In the present case, defendant did not seek review of either denial of his motion for remand until this appeal. We conclude, as did the Third Circuit, that there is no procedure by which this court can review its own motion rulings on appeal, and accordingly, this assignment is not considered.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent and have found none. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975).
For the reasons set forth herein, we hereby affirm defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] A white defendant has standing to challenge the use of peremptory challenges to exclude black jurors. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
[2] Although the trial judge did not expressly rule that the state had established a prima facie case of discrimination, a trial judge's demand for race neutral justification for peremptory strikes is tantamount to a finding that enough evidence has been shown to support an inference of intentional discrimination. State v. Green, 655 So.2d at 288.
[3] While, "[t]he reason certainly is stronger if the attorney is able to articulate an objective fact, such as that the juror was slow in answering questions or had to have questions repeated ... the judge is free, based upon all the information presented and that judge's eyewitness observation of counsel, to conclude that the reason is offered in good faith and not as a subterfuge for race." United States v. Bentley-Smith, 2 F.3d 1368, 1375 (5th Cir. 1993). This federal case was cited with apparent approval by the Louisiana Supreme Court in State v. Taylor, 99-1311 (La.1/17/01), 781 So.2d 1205, 1212, cert. denied, 534 U.S. 844, 122 S.Ct. 106, 151 L.Ed.2d 64 (2001).