880 So.2d 890 (2004)
STATE of Louisiana
v.
John E. KIRSCH.
No. 04-KA-214.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 2004.
*892 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Bobby Malbrough, Assistant District Attorneys, Gretna, LA.
William R. Campbell Jr., New Orleans, LA, for Defendant/Appellant.
*893 Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On March 28, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, John Kirsch, with one count of unauthorized entry of an inhabited dwelling (LSA-R.S. 14:62.3) and one count of aggravated battery (LSA-R.S. 14:34). Defendant was arraigned on March 31, 2003, and pled not guilty.
Defendant was tried by a six-member jury on September 16, 2003. The jury returned a verdict of guilty as charged as to count one, and guilty of the lesser included offense of simple battery (LSA-R.S. 14:35) as to count two.
Defendant filed a Motion for New Trial on September 18, 2003. On October 2, 2003, the district court denied the motion after hearing arguments from counsel. Defendant waived statutory delays, and the court sentenced him that day to two years at hard labor as to count one, and six months in parish prison as to count two. The court further ordered that the sentences run concurrently with each other.
Defendant filed a timely Motion for Appeal on October 2, 2003. The district court granted the motion that day.

FACTS
The trial transcripts are found in the original volume of the record, and they are duplicated in the supplemental volume. Trial testimony reveals the following:
On the night of March 8, 2003, Mary Gagnon and Thomas Legault entertained several friends at their home at 310 Glenn Street, Apartment C in the Bucktown area of Metairie. Ms. Gagnon testified that defendant, John Kirsch, knocked on the front door of the apartment at about 11:30 p.m. She further testified that she was acquainted with defendant from having seen him around the neighborhood, but that she did not socialize with him. Mr. Legault answered the door. Legault testified that, although defendant was neither invited nor expected, he allowed defendant into the apartment.
Defendant demanded to know where "Rene" was. Mr. Legault testified that he had allowed Rene to live in the motor home he kept parked in a nearby lot. However, he had evicted Rene days earlier for failing to pay rent. Ms. Gagnon testified that she and her companions told defendant Rene was not there. Defendant repeatedly demanded to know where Rene was, and he became increasingly more agitated.
Robert Craft, one of the guests, testified that defendant pulled out a shotgun from under his jacket and asked, "You want some of this?" Defendant continued to call for Rene and to wave the gun at the guests. He hit Mr. Craft in the eye socket with the gun. Mr. Craft punched defendant in the face, and then restrained defendant by putting him in a headlock. Mr. Legault took the gun from defendant and tossed it out the door. It landed on a neighbor's property. Some of the guests managed to force defendant out through the front door. Mr. Craft testified that defendant stood outside the apartment and shouted that he had another gun, and that he would get back inside. Ms. Gagnon called 9-1-1 to report the incident. Defendant tried unsuccessfully to get in the back door of the apartment by breaking the glass.
Deputy Christopher Gorman of the Jefferson Parish Sheriff's Office testified that he and several other officers responded to the 9-1-1 call. Deputy Lipps saw defendant fleeing the scene on foot. He and other officers relocated to where defendant *894 was. Deputy Malcolm Faber, a canine handler, performed an "area search" with his dog, and located defendant. Faber testified that defendant was lying face-down on the ground on the side of the apartment complex. Deputy Gorman testified that one of the victims identified defendant as the perpetrator at the scene of the arrest.

DISCUSSION
On appeal, defendant asserts two assignments of error. He argues that the trial court erred in denying his challenge to a juror during jury selection and that he is entitled to a new trial. He also complains that the evidence at trial was insufficient to prove unauthorized entry of an inhabited dwelling, as the testimony of state's witnesses showed that defendant was authorized to enter the apartment. Defendant made this claim below in a Motion for New Trial. The trial court denied the motion.
When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Unauthorized entry of an inhabited dwelling is defined by LSA-R.S. 14:62.3 A as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An unauthorized entry is an entry without consent, express or implied. State v. Ortiz, 96-1609, p. 14 (La.10/21/97), 701 So.2d 922, 931, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219, 224. In the case of a private residence, a person must have the consent of the occupant or an occupant's agent to constitute a defense to unauthorized entry. This consent must be given by a person with authority or capacity to consent. Id.
The evidence showed that the co-residents of the apartment at 310 Glenn Street were Mary Gagnon and her companion, Thomas Legault. Defendant required consent from one of them to legally enter the residence.
Mr. Legault testified that defendant was not an invited guest. However, he did allow defendant to enter when defendant knocked on the door. According to Mr. Legault, defendant became engaged in a fight with one of his invited guests, Mr. Craft, and was thereafter forced to leave the apartment. Defendant then attempted to re-enter the residence by breaking some glass in the back door. According to Legault, defendant did not succeed in re-entering the apartment.
Ms. Gagnon testified that Mr. Legault opened the door when defendant knocked. *895 She further stated that defendant asked if Rene was there, and Mr. Legault and others in the apartment told him Rene was not there. Mr. Legault attempted to close the door; but defendant pushed his way into the apartment. Ms. Gagnon testified that she did not give defendant permission to enter the residence and that Mr. Legault was trying to close the door when defendant pushed it open and entered.
The state relies on Mr. Craft's testimony which stated that defendant left the apartment at one point and re-entered through the front door without consent, thereby satisfying the unauthorized entry element. Mr. Craft testified that after defendant entered the apartment and began acting erratically, he (Mr. Craft) left the residence. When he returned a short time later, Ms. Gagnon told him that defendant was gone, and that everything was alright. Frankie Richard, an invited guest, knocked on the door. According to Craft's testimony, when Mr. Richard attempted to enter the apartment, defendant pushed past him and re-entered without permission.
Three eyewitnesses to this event testified at trial. Craft said defendant entered through the front door of the apartment twice. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends on the determination of credibility of the witnesses, the matter goes to the weight of the evidence and not its sufficiency. The credibility of witnesses will not be re-weighed on appeal. State v. Lee, 03-901 (La.App. 5 Cir. 12/9/03), 864 So.2d 654, 660. The jury evidently felt Mr. Craft was in a better position to view and recount the details of the incident and they credited his version of the events. The testimony of Mr. Craft, which the jury found to be credible, supports a finding defendant's actions constituted an unauthorized entry.
Further, we find support in the record for a finding that defendant committed an unauthorized entry when he broke the glass on the back door of the apartment. In State v. Petty, 99-1307, pp. 3-4 (La. App. 5 Cir. 4/12/00), 759 So.2d 946, 949, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301, a simple burglary case, this Court stated that "[e]ntry is accomplished whenever any part of the defendant's person... intrudes, even momentarily, into the structure." Mr. Legault testified that defendant attempted to gain entry through the back door. Ms. Gagnon testified that, after her guests succeeded in pushing defendant out through the front door, she called 9-1-1. Defendant then tried to re-enter the apartment through the back door. She stated that defendant broke all of the glass in the door. It is unclear from the testimony whether defendant put any part of his body over the threshold. However, defendant's "entry" or attempted entry may be reasonably inferred from the circumstances.
Our review of the record convinces us that the evidence presented was sufficient to convict defendant of unauthorized entry of an inhabited dwelling. This assignment is without merit.
Defendant next contends that the trial court erred his denying his Batson challenge made during voir dire. Defendant, who is white, complains that the trial court erred in failing to act on his Batson challenge despite the fact that it found the state did not offer a race-neutral reason for excluding African-American juror *896 Diana McGowan.[1] The Equal Protection Clause of the Fourteenth Amendment guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also, LSA-C.Cr.P. art. 795.
To prevail on a Batson challenge, a defendant must first establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor has used peremptory challenges to exclude prospective jurors on the basis of race. Batson, 476 U.S. at 94, 106 S.Ct. at 1721; State v. Duplessy, 03-185 at p. 5, 853 So.2d 77, 80. In order to establish a prima facie case of purposeful discrimination, the defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent. That includes, but is not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, and the composition of the venire and the jury finally impaneled. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 288.
If a prima facie case is established, the burden shifts to the state to present race-neutral explanations for its peremptory challenges. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). If the prosecutor satisfies the second step of the Batson review by providing a race-neutral reason, the trial court must determine whether the defendant has established a case of purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); Batson, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724. The finding of an absence of discriminatory intent under the third step of Batson comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor, by how reasonable or how improbablethe explanations are, and by whether the proffered rationale has some basis in accepted trial strategy. Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. State v. Jackson, 03-0417, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 134, 136, writ denied, 03-3506 (La.4/8/04), 870 So.2d 269.
Defendant complains that the trial court erred in failing to take corrective action upon finding that the state's explanation regarding Ms. McGowan was not race-neutral. LSA-C.Cr.P. art. 795(E) provides, in part:
Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
*897 The record shows that, among the first group of prospective jurors questioned during voir dire, Ella Wilson and Diana McGowan were the only two African-Americans. Neither woman said much during the attorneys' questioning, as the attorneys directed few questions at them. Ms. Wilson, a widow, stated she was a retired school teacher and had never served on a jury. She felt the state's burden of proof in a criminal trial was fair. If the state failed to meet its burden, she would vote not guilty. She stated that she would not hold it against defendant if he chose not to testify. She believed she could be a fair and impartial juror.
Ms. McGowan stated she was single and a school board employee. No one in her family had ever been the victim of a violent crime, and she had never sat on a jury. When asked, she said she did not have a problem with any of the rules of lawsuch as presumption of innocence and burden of proofthat she would be asked to follow if selected.
When the state used peremptory challenges to excuse both Ms. McGowan and Ms. Wilson, the defense made a Batson objection. Counsel further moved the court to require the prosecutor to provide a race-neutral explanation for excluding the two women. The court found that there was a pattern of purposeful discrimination, and called upon the state to provide a race-neutral reason for striking Ms. McGowan. The following exchange ensued:
MR. MALBROUGH [Prosecutor]:
The neutral-reason why I wanted to get the defense to use their two challenges on the remaining two jurors on the panel which the state suspects that Mr. Vedros is going to have to strike. The fact that the order, the fact of the matter that they appeared in this order, is still the reason why they were stricken as they appeared as juror number 708 and juror number 252 the state may not have stricken them.
THE COURT:
Are the race-neutral reasons other than that I suppose strategy reasons that you just discussed, which I don't understand as to the first juror faced, you're saying that the state used their challenge on the very first juror, McGowan, in order to have the defense use all their challenges; is that what you're saying?
MR. MALBROUGH:
Well, it wouldn't be the first juror, it'd be the first and the second juror. Also, Mr. Vedros [defense counsel] has stricken the jurors that I figured that he would strike and he now has two remaining challenges. And its [sic] the state's position that he probably exercised those challenges on jurors 708 and juror number 252.
THE COURT:
But we're on the very first juror selected I mean faced, Diane McGowan.
MR. MALBROUGH:
McGowan I did not accept cause [sic] she has no jury experience and there were other jurors on that jury that had jury experience. She said very little during the voir dire examination. Its [sic] the state's position that she may be intimidated by some of the people who had more experience on the jury. The state doesn't need to educate Ms. McGowan on sitting on the jury. It has nothing to do with race. The state was presented with the same problem with juror number 699. She had no experience either, but she answered more questions readily than Ms. McGowan.
THE COURT:
The third juror had no juror experience and was acceptable to the state. *898 What is the distinction between the third juror and the first juror if ...
MR. MALBROUGH:
Ms. Gravolet was more vocal than Ms. McGowan was. She answered questions more readily than Ms. McGowan in my opinion. She was more forceful in her responses.
THE COURT:
What is the race-neutral reason for the striking of Ms. Ella Wilson?
MR. MALBROUGH:
Being retired. I just feel that Ms. Wilson uh, closer to the age of the defendant.
THE COURT:
And the second juror, Berteau, was also retired and in that sense is closer to the age of the defendant.
MR. MALBROUGH:
Second juror also has jury trial experience, no more than 2 or 3 years ago. Mr. Berteau, he's very attentive during voir dire examination by both myself and Mr. Vedros.
Juror number 191, Ms. Wilson, sat on an angle facing the wall most of the time and would not look at myself nor Mr. Vedros during questioning.
I've learned that school teachers are a lot like nurses; when they get on juries they have a tendency to take cool and complete control of jurors.
The trial judge found the state gave a race-neutral explanation for excusing Ms. Wilson: that the prosecutor believed school teachers have a tendency to take control of a jury. The defense objected to the court's holding. The court further ruled that the state did not provide a race-neutral explanation for cutting Ms. McGowan. However, considering that the state gave what he considered a race-neutral explanation for excluding Ms. Wilson, the judge no longer saw a pattern of discrimination. The judge therefore denied defendant's Batson challenge as to both jurors.
Defendant argues that, since the district court did not take such action as required by Article 795, he is entitled to a new trial. However, our review of the record shows that the trial court erred in ruling that the state's proffered reasons were not race-neutral.
To be valid, the prosecutor's explanation need not be persuasive, or even plausible. Unless discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Purkett v. Elem, 514 U.S. at 768, 115 S.Ct. at 1771; State v. Tilley, 99-0569, pp. 4-5 (La.7/6/00), 767 So.2d 6, 12, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001); State v. Duplessy, 03-185 at p. 5, 853 So.2d at 80. The ultimate burden of persuasion remains on the defendant to prove purposeful discrimination. Hernandez v. New York, supra.
A neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the case at bar. State v. Dunn, 01-1635, p. 8 (La.11/1/02), 831 So.2d 862, 869. The prosecutor first stated that he had stricken the African-American jurors in order to force the defense to use its peremptory challenges in a particular way. The trial judge did not find the state's reason to be clear or particularly legitimate, and accordingly found the reason given was not race neutral, although the court stated he was "conscious of a non articulated race-neutral reason as to Ms. McGowan."
The reasons given by the prosecutor for excusing Ms. McGowan in this case are similar to the facts of State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 732 So.2d 971. In that case the state gave as *899 its reason for excluding two prospective African-American jurors that it wanted to select a more desirable juror who was positioned after them in the selection process. On appeal, this Court affirmed the trial court's ruling that the explanation was race-neutral, reasoning, "there is no showing herein that the prosecutor was excusing jurors based upon racially discriminatory reasons. Rather, it is evident that the prosecutor was making a strategic decision with regard to these two jurors.... The state's decision was one of trial strategy and not racial discrimination." Bailey, 07-302 at p. 31, 713 So.2d at 604-605. As in Bailey, the prosecutor in this case explained that he excused Ms. McGowan and Ms. Wilson in order to influence the challenges made by the defense.
The prosecutor next stated that he had excused Ms. McGowan because she had no jury experience, and might be intimidated by jurors who had previously served. We find that this reason is not, in itself, discriminatory in nature, and although the record shows that the state did not attempt to cut several prospective jurors with similar traits who also had not served on a jury, when the judge in this case asked the prosecutor why one of the others was acceptable to the state despite her lack of jury experience, he replied that this juror was more vocal and forceful in her responses than was Ms. McGowan.
In the present case, there has been no showing that the prosecutor was excusing jurors based on racially discriminatory reasons. Rather, the prosecutor was making a strategic decision "to get the defense to use their two challenges." Based on our review of the record, we find that the prosecutor's stated reasons for its peremptory challenge of Ms. McGowan was sufficiently race neutral to survive defendant's challenge pursuant to Batson. Further, the trial court reached the third step in the Batson process and determined that defendant failed to meet its burden of proving purposeful discrimination. We recognize that a pattern of discrimination is not a necessary requirement to a finding of discrimination under Batson; however, as stated herein, defendant failed to meet his burden of showing purposeful discrimination by the excusal of this juror. Under the facts presented herein, we find no error of the trial court in denying defendant's Batson challenges to Ms. McGowan. Defendant's assignment of error is therefore without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The following matter was discovered:
The commitment is incorrect in that it shows defendant was convicted of aggravated battery, when he was actually found guilty of the lesser offense of simple battery. Therefore, this case is remanded with instructions that the trial court correct the minute entry to reflect the proceedings.
AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Under the Equal Protection Clause, a defendant has standing to object to the race-based exclusions of jurors by peremptory challenge whether or not the defendant and the excluded jurors share the same race. Powers v. Ohio, 499 U.S. 400, 415, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991); State v. Duplessy, 03-185, p. 4 (La.App. 5 Cir. 7/29/03), 853 So.2d 77, 80, fn. 1, writ denied, 03-2416 (La.2/6/04), 865 So.2d 739.