| .BYRNES, Judge.
On May 23, 1996, defendant Ryan Taylor, along with codefendant Michael Singleton, was charged by grand jury indictment with the first degree murder of Roger Winfield. Defendant was arraigned on September 6, 1996, and pled not guilty. A trial of both men before a twelve-person jury commenced on October 20, 1997; and on October 24, 1997, the jury found defendant guilty as charged but found Singleton not guilty. The jury recommended that defendant be sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and defendant was so sentenced on November 14, 1997. Defendant now appeals his conviction and sentence.
STATEMENT OF FACTS:
On March 16, 1996, Roger Winfield was fatally shot in the 2500- block of Alvar Street in the Florida/ Desire Housing Project. Two other men, Willie Lyons and Eddie Scales, were also shot but survived. Officer Michael Roussel interviewed both of those men at Charity Hospital and later interviewed Kinate Matthews at the crime scene. Officer Roussel said the perpetrators were described Las two black males wearing dark clothing, one having a medium “Afro” hairstyle and the other a large “Afro.” His report did not contain any mention of either suspect having a braided hairstyle.
Officer Norbert Zenon said he spoke to Kinate Matthews at the Homicide Office and that she stated that she had been crossing Alvar Street when two men ran up to Winfield and shot him. Winfield started running but fell, and then one perpetrator stood over him and shot him. Matthews did not name the perpetrators. Later, Zenon spoke to the two surviving victims, who stated that they knew the perpetrators. All three of these witnesses identified Singleton and defendant in photographic lineups.
Officer John Treadaway testified that he examined all thirteen bullet casings recovered at the scene and found that all of them had been fired from the same gun.
Lyons, a cousin of Winfield and Scales, stated that the three had walked to a vending truck parked in the 2500 block of Alvar to buy some cigarettes before a boxing event featuring Mike Tyson, which was televised on the night of the murder. Matthews lived in that block. Lyons saw the defendant and Singleton, whose first names he knew, standing in the housing project courtyard as the three were walking. The defendant and Singleton asked the three men if they had any marijuana, and the three said that they did not. When the three arrived at the place where the truck had been parked, they found that the truck had left. Matthews appeared with her daughter, whom the decedent Winfield had fathered, and the three men began playing with the child. Matthews then left with the child, and the defendant and Singleton approached the three. Lyons asked defendant, “What’s up?”, whereupon defendant responded, “You,” and shot him. Lyons ran one way, and his two cousins ran the other. Lyons heard more shots and turned to see both men firing at the decedent. On cross-examina *114 tion, he admitted that he did not immediately identify the defendants because he was “thinking retaliation.” Lyons | sidentified defendant at trial and in a photographic lineup but did admit on direct examination that he signed the wrong picture in the sequence containing defendant’s picture, stating that he did so by mistake.
Matthews stated that she heard the shots as she was crossing the street, turned, and saw the two perpetrators shooting the three men. She saw the decedent fall and the perpetrators continuing to shoot him. She described the men that night as both wearing black. One was short with plaits in his hair and a distinguishing feature on his ear. She identified that man at trial as the defendant, Ryan Taylor. At the time, she did not know the perpetrators’ names, but she later identified both of them in a photographic lineup and also at trial. She stated that she had seen defendant many times in the neighborhood prior to the attack.
Scales’ testimony was similar to that of Lyons. He stated that defendant had long braids on the night in question. He also identified the defendant in a photographic lineup and at trial.
In his defense, Taylor called his mother, Joanne Taylor; his father, Larry Taylor; his brother, Larry Taylor, Jr.; a friend, Ferrante Gibson; and his brother’s friend, Felton Floyd, all of whom testified that defendant was watching the Tyson fight with them when the murder occurred. All of these witnesses also testified that defendant’s hair was short at the time of the crime and not braided.

ERRORS PATENT:

A review of the record for errors patent reveals none.
ASSIGNMENT OF ERROR:
In his sole assignment of error, defendant argues that the trial court erred in excluding evidence indicating that he had short hair at the time of the crime, specifically a photograph of him. The State had moved prior to trial that it be shown any evidence that the defense intended to introduce, and at trial it objected |4on the ground that it had not been shown the photograph. Relying on La.C.Cr.P. art. 729.5, the trial court did not permit the defense to introduce the photograph.
La.C.Cr.P. art. 729.5 A provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
(Emphasis added.)
In this case, it is undisputed that the defense failed to show the picture to the State prior to trial and was therefore in violation of the discovery rules. Under those rules, “[i]t is within the trial court’s discretion to exclude the evidence or enter any appropriate order to remedy a party’s violation of a discovery right.” State v. Bourque, 96-0842, p. 15 (La.7/1/97), 699 So.2d 1, 11, cert. denied, 523 U.S. 1073,118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). Although the vast majority of reported cases involves discovery violations by the State, the plain language of art. 729.5 leaves exclusion of evidence as a viable option for the trial court even when the evidence is proffered by the defense. Accordingly, reversal is warranted only where there is an abuse of discretion by the trial court and resulting prejudice to the defendant. State v. Morris, 28,312 (La.App. 2 Cir. 8/21/96), 679 So.2d 482.
Here, the jury heard extensive testimony concerning defendant’s hair, especially during the defense presentation. The defense of mistaken identity and alibi was thus clearly presented. Nothing suggested that the photograph was dated, making *115 the question of when it was taken a matter of witness credibility. To reach the conclusion that it did, the jury had to believe the State’s witnesses on the issue of defendant’s identity and to disbelieve all five of defendant’s alibi witnesses. In light of the jury’s perceptions, the potential effect of the photograph would have | ¡¡been minimal, especially since the important question of the its date depended on the credibility of the same witnesses.
The trial court’s discretion in rulings relating to discovery and the dynamics of a trial is considerable. We cannot say that the trial court abused that discretion in this case. Moreover, even assuming that the trial court’s ruling was too severe, we find that the error did not prejudice defendant and was therefore harmless. “[Wjhen the trial court errs by refusing to admit defense evidence, the test for determining whether there is reversible error is that the appellate court must be convinced that the excluded evidence would not have affected the jury’s determination.” State v. Batiste, 96-1010, p. 8 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 769 n. 3, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954 (citing State v. Vaughn, 431 So.2d 358, 371 (La.1982)). Because the relevance of the undated photograph depended on the credibility of witnesses whom the jury disbelieved on the larger issue of defendant’s location on the night of the murder, we do not believe that its admission would have affected the outcome of the trial. The jury evidently found the identification of defendant by the three prosecution witnesses — both in photographic lineups and at trial — to be credible, despite the defense witnesses’ countering testimony.
Because this assignment of error is without merit and because there are no errors patent, we affirm defendant’s conviction and sentence.

AFFIRMED.