52 So.3d 275 (2010)
STATE of Louisiana in the Interest of T.H.
No. 2010-CA-0962.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 2010.
*276 Joshua Perry, New Orleans, LA, for Appellant, T.H.
Leon A. Cannizzaro, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
(Court composed of Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME, Judge PAUL A. BONIN).
PAUL A. BONIN, Judge.
T.H. appeals his adjudication of delinquency for second degree kidnapping, a violation of La. R.S. 14:44.1 B(1), for which he was committed to secure care for a period not to exceed two years. In this appeal, T.H. argues that the prosecution misrepresented a response to the Bill of Particulars that resulted in prejudice to his defense. T.H. also argues that there was insufficient evidence to support his delinquency adjudication for second degree kidnapping beyond a reasonable doubt. Because we agree with the juvenile judge that the prosecution supplemented its answer to the Bill of Particulars the week prior to the adjudication hearing, and because we find that the juvenile judge was not clearly wrong in finding beyond a reasonable doubt that T.H. committed the offense, we affirm the adjudication as well as the disposition. We explain our decision below.

I
Sometime after midnight Ali Yencha, a young tourist in New Orleans, was headed toward her Mid-City hostel. Walking on the neutral ground of Canal Street, she crossed paths with T.H., who called out to her. Ignoring him, Ms. Yencha continued on. The next moment, T.H. had grabbed her from behind, and she began to struggle and scream. To stop her screaming, T.H. placed one hand over her mouth. T.H. kept his other arm across her throat, lifted her off her feet, and carried and dragged her across Canal Street and then some distance down North Rocheblave Street. The next thing Ms. Yencha knew, T.H. was running away. She sustained an injury to the back of her head in the struggle.
This attack was witnessed by Detective Harry Stovall, who was driving down Canal *277 Street at the time. Detective Stovall, who was off-duty on that early morning, observed T.H. approach Ms. Yencha from behind, lift her off her feet, and carry her away as she struggled against him. Detective Stovall made a U-turn and followed T.H. and Ms. Yencha to North Rocheblave Street, where T.H. had by that time thrown Ms. Yencha to the ground. He was punching and choking her. When Detective Stovall pulled his vehicle to the area where T.H. was attacking Ms. Yencha, T.H. jumped up and ran back toward Canal Street. Detective Stovall initially pursued T.H. on foot and called for assistance.
T.H. was soon discovered hiding behind a large bush or tree near the 100-block of South Rocheblave Street by Officer Isiah Shannon and his partners. Once T.H. had been apprehended, both Detective Stovall and Ali Yencha identified him near the scene as the perpetrator.

II
In order to adequately review T.H.'s allegation that his defense has been prejudiced by a discovery violation, we look more closely at the procedural history of this case. After his arrest on November 28, 2009, T.H. was charged by delinquency petition on December 8, 2009, with one count of second degree kidnapping. On December 10, 2009, a Motion for Pre-Trial Discovery and Bill of Particulars was filed by T.H.'s prior trial counsel, requesting information regarding "Identifications of Youth and Others," particularly the names and addresses of "all witnesses who have made an out-of-court identification." On December 30, 2009, the prosecution responded to the motion, stating in part that, "[a]t this time, the state is not aware of any identifications of the youth or others." The police report, which contains information of out-of-court identifications of T.H., however, had also been given to defense "counsel of record" by this date.
On January 20, 2010, T.H.'s present counsel enrolled as his trial counsel. On February 24, 2010, the prosecution amended its discovery answer with respect to out-of-court identifications, instructing the defense to "[p]lease see police report regarding any identifications made of youth and others."
At the adjudication hearing on March 2, 2010, defense counsel gave an opening statement in which he related that reasonable doubt exists because there were no out-of-court identifications of T.H. During the hearing he continued to object to the introduction of any testimony of any out-of-court identifications made on the morning of the attack. Arguing surprise, defense counsel denied ever being served with the prosecution's supplemental answer to the bill of particulars.
T.H. argues that the prosecution's failure to reference the police report in its first answer to the bill of particulars, coupled with his own counsel's failure to receive the supplemental answer, constitutes a discovery violation that prejudiced his defense. "The trial court's discretion in rulings related to discovery and the dynamics of a trial is considerable." State v. Taylor, 98-2243, p. 5 (La.App. 4 Cir. 1/26/00), 759 So.2d 112, 115. Reversal of the trial court is warranted only when there has been an abuse of discretion and resulting prejudice suffered by the defendant. Id. at 114.
Here, the juvenile judge made a factual finding that the supplemental answer had been filed by the prosecution with someone from Juvenile Regional Services, the organization providing counsel to T.H., on February 24, 2010, which was the week *278 prior to the adjudication hearing.[1] Citing ongoing problems with JRS procedure, the juvenile judge noted that once filings were given to someone from that office, it is that person's responsibility to ensure that appropriate counsel receives it. We see no reason for finding that the juvenile judge abused his discretion in finding that the prosecution's supplemental answer was served, the week prior to the adjudication hearing, on someone with authority to receive it, from the JRS office. Accordingly, there has been no "misrepresentation" by the prosecution that would require reversal. Cf. State v. Allen, 94-2262 (La.1995), 663 So.2d 686.
Additionally, we note that the information sought by T.H. was contained in the police report that was turned over to defense counsel on December 30, 2009. The defense may have learned of the two identifications from the police report, which has not been included in the record but which the defense admits contains this information. The defense may have also learned of Ms. Yencha's identification of T.H. during a phone call made to her by a defense investigator.
T.H. nonetheless asserts that this was an error by the juvenile judge and that his defense was prejudiced as a result. He suggests that the prosecution's introduction of eyewitness identification evidence was a "surprise." We are not persuaded by the claim of surprise. First, as we noted above, the out-of-court identifications were actually recorded in the police report and thus actually known (or surely should have been known) to T.H.'s counsel well before the adjudication hearing. Second, there was no effort to preserve for our review any proffered evidence of surprise, such as T.H.'s investigator's having been furnished with misleading or contradictory information concerning the out-of-court identifications in his pretrial telephone interview with Ms. Yencha. And third, counsel for T.H., upon being "surprised", did not seek a recess of the hearing to prepare for this turn of events. La.C.Cr.P. art. 708 (applicable through La. Ch.C. art. 803). The only remedy sought was the exclusion of the relevant and probative evidence of the out-of-court identifications, see La. C.E. arts. 401 et seq., without the burden of showing that the identifications were either unfairly suggestive or unreliable. See Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Having determined that there is no basis for finding error in the juvenile judge's determination that the prosecution timely supplemented its answer to T.H.'s Bill of Particulars, we find that there was no "misrepresentation" by the prosecution that would warrant reversal in this case.

III
We now turn to T.H.'s claim that the evidence at the adjudication hearing was insufficient to adjudicate him delinquent for second degree kidnapping. We first note that the prosecution must prove all of the essential elements of La. R.S. 14:44.1 beyond a reasonable doubt in order to adjudicate T.H. delinquent. See In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); see also La. Ch.C. art. 883. We also note that the scope of our review in juvenile delinquency matters extends to both the law and the facts. See La. Const. art. V, § 10(B); State ex rel. Batiste, 367 So.2d 784, 788 (La.1979). Because T.H. argues that the evidence is *279 insufficient to support a delinquency adjudication beyond a reasonable doubt, we apply the manifestly erroneous or clearly wrong standard to test the sufficiency of the evidence. See State in the Interest of D.R., 10-0405, p. 3 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 929.
T.H. argues that the prosecution failed to present sufficient evidence that he committed second degree kidnapping pursuant to La. R.S. 14:44.1, which states:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
T.H. specifically asserts that the prosecution failed to establish section B(1) of the statute, which requires "[t]he forcible seizing and carrying of any person from one place to another." For the following reasons, we find that there was sufficient evidence that T.H. carried Ms. Yencha from one place to another.
At the adjudication hearing, two witnesses testified that T.H. grabbed Ms. Yencha and carried and dragged her to another street. Ms. Yencha testified that she was "grabbed from behind and carried off, dragged off down a side street." Additionally, Detective Stovall testified:
I had the occasion to be traveling down Canal Street, driving down Canal Street when I saw the victim walking along Canal Street and the defendant walking up behind her. As I continued my driving and my approach became closer to the victim and the defendant, I saw the defendant grab the victim from behind, lift her off her feet. I saw that she was violently struggling with the defendant trying to free herself from his grab, but he proceeded to carry her away ...
... Like I said, I saw him carrying her away. When I saw that, I made a U-turn on Canal Street to come back and investigate my observation. By the time I made the U-turn to return to the defendant and the victim he had then carried her from Canal Street onto Rocheblave. I then turned onto Rocheblave Street and I saw the defendant and the female as they were about entering the rear lot of a business that was right on the corner of Canal and Rocheblave. I then saw the defendant basically justthe female was struggling violently. I saw the defendant, he must have couldn't hold onto her any longer. He just threw her to the *280 ground, straddled her and began to punch and choke her ...
Detective Stovall, who had first seen Ms. Yencha walking on the neutral ground of Canal Street, observed T.H. lift, drag, and carry her across the street and some distance down North Rocheblave.
T.H. does not contest these facts, but rather he suggests that the evidence is insufficient to establish the crime of second-degree kidnapping, particularly the element that the victim be carried "from one place to another." This is occasionally referred to as the "asportation" element of kidnapping. Although "the distance traveled during the forcible seizure [is not required to] be any particular length," the term "from one place to another" requires evidence that the offender "relocated the victim from one physical setting or environment to another." State v. Davillier, 99-1204, p. 1 (La.12/10/99), 752 So.2d 149, 150.
In this case, T.H. picked up, carried, and dragged Ms. Yencha from the neutral ground of Canal Street, across the street, and down North Rocheblave for at least the length of a building before throwing her to the ground. Ms. Yencha was transported by T.H. against her will from the physical setting of Canal Street to the physical setting of a parking lot on North Rocheblave. A finding that T.H. carried his victim "from one physical setting or environment to another" is not manifestly erroneous. Under these circumstances, the prosecution has shown evidence that T.H. carried Ms. Yencha "from one place to another" sufficient to support an adjudication of delinquency for second degree kidnapping.

DECREE
The adjudication of T.H. as a delinquent for the second degree kidnapping of Ali Yencha is affirmed. The disposition judgment committing T.H. to secure care for a period not to exceed two years is also affirmed.
AFFIRMED.
NOTES
[1] The juvenile judge stated: "I take Ms. [ADA's name] at her word that she's an officer of the court. I know that she would not tell me an untruth about filing it with your office."